23 117
29 556

23 117
f59 376
f59 747

THE STATE OF NEBRASKA, EX REL. THE BOARD OF TRANSPORTATION OF THE STATE OF NEBRASKA, v. THE FREMONT, ELKHORN AND MISSOURI VALLEY RAILROAD COMPANY.

1. Railroads: POWERS OF STATE BOARD: COMPROMISE. Section one of the act to regulate railroads, prevent unjust discrimination, and to provide for a board of transportation, etc., requires all charges made for any service rendered or to be rendered in the transportation of property by railway companies to be reasonable and just, and prohibits every unjust and unreasonable charge, and declares it to be unlawful. Therefore, where the board of transportation finds that the charges on a line of railway are not reasonable and just, and orders a reduction of such rates 33⅓ per cent, such board cannot enter into a compromise with the railway companies by which the charges within the state shall be in excess of the rates found to be reasonable

and just, in consideration of certain reductions in rates on in
and out freight to and from Chicago and other common points.

2. ―――: ―――: FIXED RATES AND CHARGES. It is the duty of
the board to fix rates and charges within the state at such sum
as shall be reasonable and just, and make findings of the fact.
Its findings are *prima facie* evidence of the truth of the same,
but when issue is taken upon them in court, the question of
what are reasonable and just charges must be determined like
other questions of fact.

MOTION to dismiss.

*J. B. Hawley* and *T. M. Marquett*, for respondent, for
the motion.

*William Leese, Attorney General*, and *O. P. Mason*,
*contra*.

MAXWELL, J.

In September, 1887, the board of transportation required
the respondent to reduce its freight rates within the state
·33⅓ per cent.    The respondent neglected to comply with
the order, whereupon the board filed a petition in this court
setting forth the facts and praying for a writ of mandamus
to compel the respondent to comply with the order.    The
respondent demurred to the petition, and after full argu-
ment the demurrer was overruled and leave given to answer.
See 22 Neb., 313.  The respondent now files an answer (omit-
ting formal parts) as follows:

"Defendant admits that on the first day of July, A.D.
1887, the said officers composing said board, so created,
entered upon their duties as such board, and ever since
have been and now are acting as such board of transporta-
tion.

"Defendant admits that, under the provisions of said
act, said board was clothed with certain powers, and were
given general supervision of all railroads operated by steam

in this state, and it was made the duty of said board to inquire into any neglect of duty or violation of any of the laws of this state, and to carefully investigate any complaint made in writing and under oath, concerning any unjust discriminations against any person, firm, corporations, or locality, either in rates, facilities furnished, or otherwise; admits that the Lincoln board of trade and freight bureau filed a complaint in writing and under oath, against the defendant, as set forth in the relator's petition embodied in said writ herein, and for the particulars thereof the defendant refers to a copy of said petition made a part of said writ; admits that such proceedings were had on said complaint; that on the day.........of........., A.D. 1887, an answer was filed and issue joined, and a hearing was had of the matters complained of, and that a finding of facts was made by said board of transportation on the 24th day of September, 1887, that the charges for the services rendered and to be rendered by the respondent were unjust and unreasonable and prohibited by law; that said finding of facts informed said defendant of the extent of such alleged unjust charges, and also said board required said defendant to comply with its finding and order from and after the first day of October, 1887; admits that 'Exhibit A,' filed with the relator's petition herein, contains a copy of all the proceedings had and done by said board of transportation in the premises up to the time of the filing of the petition herein, and including the said complaint filed before said board of transportation, the answer of defendant, and the findings of fact, and the said order of said board of transportation, as aforesaid; admits that it did not comply with said order of said board of transportation within the time limited by said order, because the defendant really and in good faith believed that the charges made by the defendant, and all of them, for the transportation, handling, storage, and receiving and delivering of freight were reasonable and just, and that said board of transportation had no legal

power or authority, upon the said petition filed before it, or otherwise, to require and order the defendant to reduce its rates and charges for such service; still it was true at the time said order was made, and before and after the making thereof, the defendant was desirous of so adjusting its rates and charges for the transportation of property, and for the receiving, delivering, storage, and handling thereof, as to receive the concurrence, support, and approval of said board of transportation; that the proper officers and agents of the defendant had often expressed to the said board of transportation, and the members thereof, such desire and wish upon the part of the defendant; that the members of said board of transportation had from time to time expressed the wish to the officers representing the defendant and other railroad companies in this state that an adjustment of the freight tariffs and charges might be made on the various railroads in the state, that should reduce the then existing rates and charges, and that should be uniform as applied to the different lines of road in the state; that for the purpose of consummating, if possible, such an object, and for the purpose of securing, if possible, harmony of action between the board of transportation and the various railroad companies of this state, a meeting was held by said board of transportation at their rooms in the city of Lincoln, on the 13th day of October, A.D. 1887, at which the general manager, general freight agent, and general attorney of the defendant were present and participated. There were also present and participating, officers of the Burlington & Missouri River Railroad Company, of the Union Pacific Railroad Company, the Missouri Pacific Railroad Company, and the representatives of other railroads of this state. The proceedings of such board of transportation, on the said day, were duly entered of record in the records of said board, and a copy thereof is hereto attached, marked 'Exhibit B,' and made a part of this answer; that on the 14th day of October, A.D. 1887, a

meeting of said board of transportation was held at their rooms in the city of Lincoln, at which the same representatives of railroads were present as on the previous day. The action and proceedings of said board of transportation, on said last named day, were duly entered of record by said board of transportation in the records of said board, and a copy of said proceedings is hereto attached, marked 'Exhibit C,' and made a part of this answer; that on the 27th day of October, A.D. 1887, at a meeting of said board of transportation, held at their rooms in the city of Lincoln, further proceedings were had by said board of transportation, and entered of record in the record of proceedings of said board, a copy of which last named record and proceedings is hereto attached, marked 'Exhibit D,' and made a part of this answer; that defendant has in all things carried out and complied with the orders, understandings, and agreements as made and entered into, as aforesaid, on the said thirteenth and fourteenth days of October, as aforesaid, and the schedules and tariffs of rates and charges on freight and property on all the lines of railroad of the defendant, in this state, and between all stations on defendant's lines of railroads, aforesaid, went into effect and use, by the defendant, on the 31st day of October, 1887, as provided, ordered, agreed upon, and required by said proceedings of said board on the 13th and 14th days of October, as aforesaid, and the reduction of freights and charges upon coal, lumber, and grain, as provided in said arrangement, agreement, and proceedings, have been made and carried out as provided and agreed upon in said proceedings of October 13th and 14th, as aforesaid.

"By reason of the premises said findings and order of said board of transportation, made and entered on the 24th day of September, 1887, have been satisfied, superseded, set aside, and revoked. And the defendant further says that the reductions in rates and charges made on the defendant's line of railroads, in and by the said agreement,

arrangement, and proceedings of October 13th and 14th, as aforesaid, and in consequence thereof, as hereinbefore stated and set forth, are greater in the aggregate than those ordered by said board of transportation by its order of September 24th, as aforesaid, and are·in all respects reasonable and just; that it entered into said agreement and arrangement to reduce the rates and charges on transportation of freight, as aforesaid, in good faith and for the purpose of settling the question with the board of transportation, believing then and now that the low rates thereby agreed upon, adopted, and fixed by the board, as aforesaid, were too low, and lower than this defendant ought to be required to make, but the defendant consented thereto, and put the same into operation with the belief that the agreement and arrangement aforesaid would be fully and fairly carried out, and that this suit would be dismissed, and that this defendant would not in any way be complained of in regard to freights and charges, but would be free from complaint, as it believes in justice it ought, both before the board of transportation and the courts."

The compromise referred to as "exhibit B," is as follows: (October 13th, 1887) "Mr. Kimball stated that the companies had agreed to submit a uniform distance tariff, and to agree to reduce the tariff on hard coal from Chicago to Nebraska points west of the Missouri river sixty cents per ton; on lumber, to all Nebraska points, from two to three cents per hundred pounds; and on grain, to points where such reduction had not as yet been made, from eight to thirteen cents per hundred pounds. The board took the same under consideration, and after consultation, adopted and submitted the following proposition:

"'Resolved, That the board of transportation accept the proposed compromise of a reduction in the tariff rates on coal, lumber, and grain, as proposed by the representatives of the railway companies, and a reduction of the distance tariffs of said companies; Provided, That the distance tar-

iffs of said railways shall be made by using the tariff rate on first-class freight as given in Tariff No. 249 of the B. & M. R. R. as the standard basis, and the rates on the other classes of freight shall be determined in accordance with the formula given in the letter of the board to Mr. Holdrege.'

"Upon the presentation of the above resolution it was taken under advisement by the representatives of the railways, and pending such consideration the board instructed the clerk to inform the said representatives that in case such proposition was adopted all pending controversies would be dismissed.

"The meeting adjourned until Friday, October 14th, 1887, without any conclusion being reached.

"H. A. BABCOCK,
"*President pro tem.*

"October 14th, 1887. The board met pursuant to adjournment, the same members, secretaries, and representatives of railways being present as on yesterday. The companies submitted another proposition, and the same was considered by the board, and the following recommendation was introduced:

"'The secretaries of the board of transportation, having had the second proposition under consideration, submit the following resolution, and recommend its adoption:

"'*Resolved,* That in consideration of a reduction of sixty cents per ton on hard coal from Chicago and common points to all points in Nebraska west of range nine east of the sixth principal meridian, and a reduction in the rates upon grain, from all Nebraska stations to Chicago and common points, of from eight to thirteen cents per hundred pounds from the tariff rate in force April 1, 1887, and a reduction in the rates upon lumber from eastern and north-eastern points to all Nebraska stations, of from two to three cents per hundred pounds from the rate in force at the present date, the board of transportation hereby

accepts the proposed distance tariff as agreed upon by the railroad companies and presented to said board; *Provided,* That in no event shall the present rate be raised by this action, either in the present distance or distributing tariffs; *And provided further,* That in every instance where this proposed compromise tariff is lower than the present distributing tariffs the compromise tariff shall prevail.'"

Afterwards the board entered an order as follows:

"October 27th, 1887.   At a called meeting of the board of transportation holden on the 27th day of October, 1887, among other things, the following proceedings were had:

"Mr. G. L. Laws introduced the following resolution and moved its adoption:

"Whereas, The F., E. & M. V. R. R. has substantially complied with the order of this board reducing local freight rates between all stations on its lines of railroads in this state, therefore,

"*Resolved,* That it is the sense of this board that the mandamus case against said F., E. & M. V. R. R. now pending in the supreme court of this state in the name of this board be continued, and the supreme court is hereby respectfully requested to continue said case till the January, 1888, term of said court, to the end that the board may be fully advised as to the advantages gained by the reduction in rates agreed upon.

"G. L. Laws,

"Joseph Scott,

"H. A. Babcock,

"*Board of Transportation.*

"Upon the adoption of the above resolution, those voting in the affirmative were: G. L. Laws, H. A. Babcock, and Joseph Scott.   Those voting in the negative were: William Leese."

The attorneys for the respondent claim that they have complied with the order of the board, and now move to dismiss the action.   The respondent does not claim that it

has reduced its rates in the state 33⅓ per cent, but that the reduction in rates over lines with which it is connected with Chicago, together with the reduction made by it on its lines within the state, are equivalent to 33⅓ per cent within the state.

The attorney general contends, first, that the board has no authority to enter into a compromise of this kind; and second, if it has, the respondent and the other railroads within the state have not complied with the terms of such compromise.

Two questions are presented for determination: First, the authority of the board to enter into a compromise of this kind; and second, whether in fact the respondent and other roads have complied with the terms thereof.

The first section of the act to regulate railroads, prevent unjust discrimination, provide for a board of transportation and define its duties, etc., [Comp. Stat., 1887, Art. VIII., Ch. 72], provides that, "all charges made for any service rendered or to be rendered in the transportation of passengers or property, as aforesaid, or in connection therewith, or for the receiving, delivery, storage, or handling of such property shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

Other sections follow which provide, in effect, that every person shall be charged the same price for the same service, and prohibiting all pooling of earnings and unjust discrimination against either person or place.

The key-note of the act is, that "all charges made for any service rendered or to be rendered in the transportation of passengers or property, or in connection therewith, shall be reasonable and just. And every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

To carry into effect the provisions of the act, the board of transportation was created, with full powers to deter-

mine in the first instance what rates are reasonable and just, what unjust and unreasonable, and to prevent unjust discrimination. As recently held by this court, the power of such board for these purposes is full, ample, and complete. The power of the board, however, is derived entirely from the statute. When the board finds that the charges for transportation on any railway in the state are unjust and unreasonable, in other words, are not reasonable and just, such board is required to make a finding of the facts and fix the rate at such sum as it deems reasonable and just. Now, if the board finds the charges of the railway companies within the state to have been unjust and unreasonable to the extent of $33\frac{1}{3}$ per cent, is it any answer to such finding to say that the rates to and from Chicago are also unreasonable and unjust? We think not. The question before the board is as to the rates within the state. Its findings of fact are merely *prima facie* evidence of the same, and, in case the truth thereof is denied, must be determined like any other controversy in court where facts are asserted on one side and denied on the other. Many parties residing within the state do not desire to ship goods out of the state, but to various points within the same. It certainly cannot be claimed that they must be compelled to pay unjust and unreasonable rates in order that other parties, who desire to ship out of the state, may ship on more advantageous terms. The board, therefore, cannot enter into any compromise or arrangement with any railway company that will sanction or continue rates within the state which are not reasonable and just. As the board had previously found that the charges upon the respondent's lines of railway within the state were too high by $33\frac{1}{3}$ per cent, and there is no finding by such board in conflict therewith, the reduction in rates of freight to and from Chicago cannot be accepted as a condition of retaining unjust and unreasonable rates within the state. We conclude, therefore, that the so-called compromise was in

excess of the power of the board, unauthorized, and does not constitute a defense to this action. In saying this, however, there is no doubt of the good faith of the secretaries and also of the board in their efforts to secure a reduction of in and out rates, which constitute a large part of the charges for freight. Such rates seem to have been raised, apparently without cause, just prior to the taking effect of the Interstate Commerce Act, and the effort of the board was to secure a reduction to the rates existing prior to that time.

The attorney general contends that, although rates have been reduced to the published schedules in force on the different railways in the state on the 1st day of April, 1887, yet such published schedules did not represent the actual charges to shippers; that secret rebates were the rule, and that the rebates in many cases amounted to a considerable proportion of the charges. One of the attorneys for the respondent, who represents one of the principal railway companies in the state, during the argument of the case, in answer to inquiries by the associates of the writer, stated, in effect, that such rebates did exist to a large extent, and that it was impossible to tell just what the average rates were prior to April 1, 1887. It is apparent, therefore, that the railway companies have not reduced the rates to those in force prior to April 1, 1887. It will not do to say that the published rates were the rates; they would only be such when they are adhered to. If they are not the rates actually charged and collected, less the rebates, then the rates must be determined by deducting the rebates from the nominal charges, and stating the average of the deduction. This is in the power of the railways to do, and until it is done they have not complied with the terms of the alleged compromise.

The motion to dismiss the action is overruled.

JUDGMENT ACCORDINGLY.

THE other judges concur.