STATE, EX REL. BOARD OF TRANSPORTATION, v. M. P. R. Co.

[FILED MAY 13, 1890.]

1. **Railroads : GRAIN ELEVATORS: SPECIAL PRIVILEGES PROHIBITED.** Under the provisions of the act to regulate railroads, etc., which took effect July 1, 1887, the board of transportation of the state may institute an action in a proper case to require a railway company to furnish like facilities to erect an elevator at one of its stations, to any person engaged, or who desires in good faith to engage, in the business of receiving, handling, and shipping grain over the railway.

2. ———: ———: ———. Such facilities need not necessarily be upon the right of way but may be along the side thereof; but if facilities are granted to one or more for that purpose on the right of way, the same privilege, upon like terms and conditions, must be granted to others who are engaged, or desire in good faith to engage, in the business at that point, of receiving, storing, and shipping produce over such railway.

3. ———: ———: RESTRICTIONS. A railway company may impose reasonable terms and conditions upon persons who erect, or are about to erect, elevators at stations on the line of such road, but such conditions and terms must be the same to all such persons.

ORIGINAL application for *mandamus.*

*William Leese, Attorney General, J. M. Stewart,* and *J. R. Gilkeson,* for relator:

Special privileges cannot be granted by common carriers even when such privileges do not consist in actual transportation. (*Crouch v. R. Co.,* 78 Eng. C. L., 255; *Marriott v. R. Co.,* 87 Id., 499; *Sanford v. R. Co.,* 24 Pa. St., 382; *Olcott v. Supervisors,* 16 Wall. [U. S.], 695; *N. E. Express Co. v. R. Co.,* 57 Me., 188; *R. Comr's v. R. Co.,* 63 Id., 269; *McDuffee v. R. Co.,* 52 N. H., 449; *Scofield v. R. Co.,* 43 O. St., 571.) The order of the board falls within the police power of the state. (*Munn v. Illinois,* 94 U. S., 125; Cooley, Const. Lim. [5th Ed.], 706; Tiedeman, Police Power, sec. 92.)

*B. P. Waggoner, James W. Orr,* and *A. R. Talbot, contra:*

Special privileges in that which does not constitute transportation are not unlawful. (*People v. R. Co.,* 57 Ill., 436; *Old Colony R. Co. v. Tripp,* 17 N. E. Rep. [Mass.], 89; *Audenried v. R. Co.,* 68 Pa. St., 370, 379–80.) The order of the board is an attempt to take private property for private use without due process of law or compensation. (*State v. R. Co.,* 36 Minn., 402 [S. C., 31 N. W. Rep., 365]; *L, etc., R. Co. v. R. Co.,* 97 Ill., 506; Lewis, Eminent Domain, sec. 58.)

MAXWELL, J.

This is an application for a writ of *mandamus* to compel the respondent to perform the order of the board of transportation.

It appears from the record that in October, 1889, John W. Hollenbeck, Cyrelius Lemasters, John W. Miller, John Hayes, Charles Hall, and others, under the name of

the Elmwood Farmers' Alliance No. 365, of Cass county, presented their petition to the board of transportation, in which they allege:

"First—That the petitioners and complainants are now and have for many years been extensive raisers of corn, wheat, oats, and other cereals; and that large quantities of said cereals have been marketed in seasons past, and that large quantities are now ready for the markets; that the several farms and leaseholds of the petitioners are situated near Elmwood, in Cass county, Nebraska.

"Second—That the Missouri Pacific Railway Company is a common carrier engaged in the transportation of passengers and property by railroad under a common control, management, or arrangement for a continuous carriage or shipment through Elmwood aforesaid.

"Third—That the said defendant railroad company is the owner of the right of way and depot grounds bordering the main and side tracks of the defendant company, upon which are located the station houses and other shipping facilities connected with the transportation originating at or destined to Elmwood station aforesaid; that the complainants aforesaid did make a written application to the general manager of the defendant company for a location on the right of way at Elmwood station aforesaid, for the erection of an elevator of sufficient capacity to store, from time to time, the cereal products of the farms and leaseholds of complainants aforesaid, as well as the products of other neighborhood farms; that the application aforesaid was refused by the general manager of the defendant company aforesaid.

"Fourth—That the elevators now located on the right of way of the defendants aforesaid at Elmwood station aforesaid are during certain seasons of the year wholly insufficient in affording a market for the cereals of the complainants and others desirous of marketing their grain.

"Fifth—That the refusal of the defendant railroad com-

pany to lease a location for an elevator as aforesaid is in contravention of the provisions of an act of the legislature, entitled 'An act to regulate railroads, prevent unjust discrimination,' etc., approved March 31, 1887, in that the said refusal is an unjust discrimination; the said Missouri Pacific Railway Company, by the refusal aforesaid, is subjecting the complainants aforesaid to an undue and unreasonable prejudice and disadvantage in respect to traffic facilities over other localities; the said Missouri Pacific Railroad Company, by the refusal aforesaid, is giving an undue and unreasonable preference and advantage to Adams and Gilbert, and Eells Bros., owners of the elevators located at Elmwood on the right of way of the defendant, by permission of the said Missouri Pacific Railroad Company."

The railway company filed an answer in that case, and issue was joined, and upon an investigation of the facts the board made the following findings and order:

"First—That the defendant has all its side tracks within the limits of its right of way and depot grounds at the said station of Elmwood.

"Second—That there are only two elevators at said station of Elmwood, having the combined capacity of ten thousand bushels, and that said elevators are insufficient to handle the grain shipped at said station; and that the owners and operators thereof have entered into a combination and do combine and fix the prices of grain and prevent competition in the purchase price thereof; and that there are not sufficient facilities for the handling and shipping of grain at said station.

"Third—That it is necessary for the convenience of the public, patrons, and shippers of grain of said railroad company that another elevator be erected and operated at said station.

"Fourth—That the defendant has permitted two elevators to be erected upon its grounds at said station, and that the same are now being operated, and that the said

defendant has refused to grant the same privilege to the complainant.

"Fifth—That an elevator is necessary for the shipment of grain by railroad, and that by reason of the side track being placed within the right of way and depot grounds the plaintiff cannot ship grain without building its elevator upon the grounds of the defendant.

"Sixth—That there is room upon the grounds of the defendant at said station for another elevator without materially interfering with the operation of said railroad; and the building of the elevator by the plaintiffs upon said ground will not materially affect the defendant in the use of its grounds, or be an unreasonable burden to the defendant.

"Seventh—That granting of the right and privilege by the defendant to the elevators now standing upon its right of way and depot grounds at said station, and refusing to grant the same right and privilege to the complainants, is an unjust and unreasonable discrimination against the complainants, under the circumstances of this case.

"Eighth—That the said respondent has discriminated against the complainants, and that it has unlawfully made and given a preference and advantage to Adams and Gilbert, and to Eells Bros., owners and operators at said station.

"It is, therefore, by the board of transportation of the state of Nebraska, considered, adjudged, and ordered that the respondent, the Missouri Pacific Railway Company, shall cease and discontinue discriminating against the complainants, and grant to said complainants the same facilities and privileges as granted to the owners and operators of the elevators now established at said station; and that said respondent, within ten days after the service of this order, grant and give to the complainants, on like terms and conditions as granted to the said Adams and Gilbert, and Eells Brothers, the right and privilege of erecting an elevator upon its grounds at said station adjacent to said respond-

ent's side track, at a convenient and suitable place thereon, to-wit, at a point on the side track of said respondent near the east terminus of said side track, or some other suitable and convenient place on said side track, if the parties to this action can agree, and that said respondent grant to the said complainants all and equal shipping facilities for the handling and shipping of grain at said station, and cease from all discrimination or preferences to and of said shippers and operators of elevators at said station of Elmwood aforesaid."

The respondent in its answer in this court admits that it is a corporation organized under the laws of the state, the petition of Hollenbeck and others, and the order of the board thereon and its refusal to comply with said order, and alleges:

"That it is the owner of the right of way and depot grounds bordering its main and side tracks at Elmwood station, upon which are located station house and freight shipping facilities connected with the transportation originating at said station, but alleges and charges the fact to be that such grounds were purchased by this respondent for the purpose of enabling it to carry on and successfully prosecute its business as a common carrier, and not for the purpose of disposing of the same, or using the same for purposes other than such as were necessary or incidental to its said business as a common carrier.

"That the board of transportation is not the real party in interest and cannot bring the action in its own name; that Hollenbeck and the other petitioners represent themselves individually and cannot invoke the aid of the board of transportation; that the said individuals named in said petition did make a written application to the respondent company for the location on the right of way at Elmwood station of this respondent company, of an elevator of sufficient capacity to store, from time to time, the cereal products of the farms and leaseholds of the said petitioners, as

well as the products of other neighborhood farms, but did not make any application to this respondent company requesting it to discharge any duty it owed to said petitioners as a common carrier, or in any other manner or form, for the purpose of transporting over the line of the railway of this respondent company the cereal products of the farms and leaseholds of the said petitioners, or the products of other neighborhood farms. And said petitioners demanded the right to use the private grounds of this respondent company for the purpose of erecting an elevator and warehouse thereon, in order that they, the said petitioners, might store their grain in said warehouse and elevator; and in making said application and request of this respondent company the said petitioners did not offer to make any compensation to this respondent company for the property by them sought to be appropriated to their individual use and benefit, but demanded, and claimed as a right, that they should be permitted to build such warehouse and elevator upon the private grounds of this respondent company, which it had purchased and which it owned and which was necessary to enable it to successfully carry on and prosecute its business as a common carrier. And this respondent company did thereon refuse to permit its said property to be appropriated and confiscated to the use of said petitioners."

There are other allegations in regard to the statutes and constitutional provisions of the state. The correctness of the findings of the board is not seriously questioned, but its power to make such findings and order is denied.

It is unnecessary to review at length the powers of the board of transportation. That question was very fully and carefully considered in *State* v. *F., E. & M. V. R. Co.*, 23 Neb., 117, and in our view the judgment rendered therein is correct. In that case it was held that the findings of the board were *prima facie* evidence of the truth of the same, but when issue is taken upon them in court the question of what is

reasonable, etc., must be determined like other questions of fact.    The constitutional convention in 1875, in order to prevent any misconception of the public character of railway corporations in this state, provided that "railways heretofore constructed, or that may hereafter be constructed in this state, are hereby declared public highways, and shall be free to all persons for the transportion of their persons and property thereon, under such regulations as may be prescribed by law."    Such, no doubt, is the law without a constitutional provision, but in view of the claims of certain corporations at that time, and to prevent any misconstruction or misconception of the right, the provision was inserted in our fundamental law.    The railway system of the state was then in its infancy, while at the present time lines of railway extend in almost every direction.    It was also provided in the constitution that "the legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in all charges of express, telegraph, and railroad companies in this state, and enforce such laws by adequate penalties," etc.

Section 3 of "An act to regulate railroads and prevent unjust discrimination," etc., which took effect July 1, 1887, provides: "That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any preference or advantage to any particular person, company, firm, corporation, or locality, on any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any prejudice or disadvantage in any respect whatsoever.    Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith, and

shall not discriminate in their rates and charges between such contracting lines; but this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business."

Section 17 of the same act declares that "After a full investigation of the matter said board shall again make a finding of the facts and make such an order as it may deem just in the premises. If said railroad shall refuse or neglect to comply with such order, the board shall order the attorney general, or the county attorney of the proper county, to institute a suit to compel such railroad company to comply with such order and it shall be the duty of the attorney general, or the county attorney of the proper county, at the request of the board or any person interested in any such order or finding, to apply to the supreme court, or to the district court of any county through or into which its line of road may run, in the name of the state and on the relation of said board, for a writ of *mandamus* to compel such railroad company to comply with such order; and upon the hearing of any such cause such finding and order shall be as against such railroad company *prima facie* evidence of the reasonableness of such order and of the necessity of such repairs, changes, additions, or improvements, or other matters in such order required to be done or omitted."

The right of the state board to bring the action is here expressly given, and the general provisions of the statutes in regard to the proper party plaintiff do not apply, as section 32 of the Code provides for the bringing of an action by an officer in such name as may be authorized by law. But it is said that the object sought in this case is private, and not of a public character. We think differently, however, as the purpose is to increase the facilities for shipping produce over a public highway.

The first section of the act also provides that "All

charges made for any service rendered, or to be rendered, in the transportation of passengers or property as aforesaid, or in connection therewith, or for the receiving, delivery, storage, or handling of such property, shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

It will thus be observed that the provisions of our constitution and statutes relating to railways are that they shall have no favorites, that all persons having business with such companies relating to or connected with transportation shall be treated alike.

On the other hand, to protect the companies, the last half of section 4, article XI, of the constitution provides that "The legislature may, from time to time, pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on the different railroads in this state." The power of the legislature, therefore, in regard to the matters mentioned, is limited to what is reasonable.

The constitution and statutes make railways one of the public agencies of the state, and subject them to the laws and require such railways to render services of the same kind for all persons upon the same terms and conditions. A railway cannot carry the goods of A a certain distance for one dollar and charge B, or any other person, a greater sum for like service, and the same rule applies in all its transactions as a common carrier.

As was held in *State v. R. V. R. Co.*, 17 Neb., 647-8; "The right to build and operate a railroad, and to charge and take tolls and fares, is a prerogative granted by the state. Public utility is the consideration for such grant. Although in the hands of a private corporation, it is still a sovereign franchise, and must be used and treated as such; it must be held in trust for the general good. In the use of such franchise all citizens have an equal interest, and all must, under the same circumstances, be treated alike, with-

560      NEBRASKA REPORTS.      [Vol. 29

State, ex rel. Bd. of Transportation, v. M. P. R. Co.

out unjust discrimination against any." The action in that case was brought to compel the defendant to erect a depot at Blue Springs, and it appeared to the court that the interests of the public demanded a depot at that point; in other words, in the language of the statute the corporation was required to erect such depots as shall be necessary between the places of the termini of said road. (Sec. 75, ch. 16, Comp. Stats.)

On the other hand, railways are protected by the constitution from unjust legislation by the restriction that laws affecting rates, etc., must be reasonable. A railway franchise is thus held in trust for the general good, and in the use of the same all persons have an equal interest and equal rights. The right of way of a railway company is acquired for the use of the railway for public use, and this whether it is acquired by condemnation or conveyance by deed. In many cases the proprietors of land through which a railway is located, having no desire to obstruct the construction of the road, convey the right of way by deed, but the object is to enable the corporation to subserve the public interests by the construction and operation of the road, and the land having been conveyed for public purposes, cannot be diverted to other uses inconsistent with such public use.

It is a well known fact that the ordinary mode of shipping grain on the railways of this state is through the intervention of elevators, which at the various stations on the line receive the grain and store it, if need be, for a time, and load it into cars for transportation. Elevators are thus a part of the system for the transportation of produce and come under the head of "facilities furnished" in the act of 1887, and questions relating to them are placed by that act under the control of the board of transportation; in other words, the railway company must give equal privileges to all persons who may desire, in good faith, to erect elevators at a station on its line in order to ship produce

over such railroad.    It need not grant these facilities on its right of way, because such right of way may, and in many cases will, be necessary for the various side tracks at the station; but if it grants such right to one or more persons, then it must, on the same terms, grant a like right to all who in good faith apply for that purpose; in other words, if a portion of its right of way is surrendered to A and B, in which to erect elevators for the purpose of receiving, storing, and shipping grain, then on like terms it must furnish the same facilities to C, D, and E, if they apply for that purpose.    No doubt it may impose reasonable terms and conditions upon all persons who desire to erect such elevators, but such conditions and terms must be the same in every case and apply to all alike.    In a certain sense the right of way is private property of the corporation, but it is public so far as the uses of persons or the public in connection with the business of the railway is concerned, and it would be a violation of such trust to permit one or two persons to have exclusive rights in the premises; and if the elevators are placed on the parties' own land at a station, adjoining the right of way, it is the duty of the company to furnish equal track facilities to all persons engaged in the business.    It may be true that two elevators can do the business at any station, yet it is also a fact that it is possible for these to combine to depress the price of produce at that point, and it is also possible that all the elevators in the state may enter into a combination to pay but a certain price, below its value, for produce and thus prevent competition and virtually rob the producers of the country of their labor.    In such case it would be absolutely necessary to erect additional elevators to protect the community.    And the fact that this right exists, even if it is not exercised, acts as a wholesome check upon the elevator combination.

If it is said that with the right to erect elevators upon like terms and conditions to all, the business would be

36

overdone and the profits arising from the shipments of produce be reduced to the lowest possible limit, the answer is that, even if this were true, the loss would fall upon the shippers and not upon the railway company. It would transport the produce of the country, and the increased price received by the producers would, or at least might, enable them to greatly improve their farms by the erecting of new buildings and other improvements, and thus the business of the road would be increased. If two elevators at any point are sufficient, why not apply the same rule to other departments of business and provide that there shall be but two grocery, dry goods, hardware, shoe, or other stores in any city or village? There is not an argument in favor of but two elevators at a station that does not apply with greater force to the limitation of all kinds of business at the same place. Indeed, the limiting of the number of houses conducting any line of business at a particular place would be much less injurious than to restrict the facilities for shipping produce at that point to two elevators, because the producers in the vicinity are compelled to ship from that place, while they may make their purchases where they can be made to the best advantage. Experience has shown that the law of demand and supply furnishes an adequate remedy in all such cases, and no arbitrary rule can be adopted without working injustice to a greater or less extent. There is no more odious form of oppression than that of depressing by a combination the price of produce when purchased from the producer and afterwards greatly advancing the price to the consumer, and no form of such oppression, even in a limited degree, should receive the sanction of the courts.

There is no doubt a railway constructed through any portion of the country is a great public benefit, both locally and generally, and it is equally well known that the earnings of a railroad depend largely upon the number, wealth, and prosperity of the communities through which

it passes. An impoverished people have but little to spend for improvements, new enterprises, or travel, their wants being restricted to the necessaries of life. If this condition of society extends along the whole line of the road its receipts must necessarily be meager, while a railway through a populous, prosperous community partakes of the general prosperity, and business is abundant. Thus its interests coincide with its duty to furnish the same facilities ·to the producers as to the dealers for the shipment of produce, in order that the highest price may be obtained and the prosperity of the community advanced.

Our attention is called to the case of *State v. C., M. & St. P. R. R. Co.*, 31 N. W. Rep., 365, which is said to be stronger than the one at bar. In 1885 the legislature of Minnesota passed an act which required any railway company organized under the laws of the state to permit any person, etc., for an annual rental of one dollar, to construct and operate an elevator at any of its way stations, etc., the penalty for a refusal being not less than $100 nor more than $5,000. The action was brought to recover the penalty. The court held that the act was the taking of private property for a private use and therefore was unconstitutional. The question here involved does not seem to have arisen in that case, nor is there anything to show that the proposed regulation was reasonable.

The case of *People v. C. & N. W. Ry. Co.*, 57 Ill., 436, and *Old Col. R. Co. v. Tripp*, 17 N. E. Rep., 89, do not seem to be applicable to the constitutional and statutory provisions of this state.

This is not a question of the taking of private property of the railway for an elevator. The question is, Can the railway company grant the right to one or two persons upon certain terms and conditions and deny it to others upon like terms and conditions? We answer, that under our constitution and statutes it cannot, as it can grant no exclusive privileges in the facilities for the handling and shipment of produce.

The terms upon which the right was granted to the parties who have erected elevators at Elmwood are no doubt satisfactory to the company, but the sum paid by such parties therefor we have no means of knowing, nor is it material in this case. It was sufficient to satisfy the company for the privilege, and as they can grant no exclusive privileges in the facilities for shipping produce, the parties who are the real complainants in this case are entitled to like rights upon the same terms and conditions.

A railway company cannot permit the construction of certain elevators on its right of way and then prohibit other persons from the same privilege upon the ground that such right of way is private property. If this were so it would afford an easy mode for the evasion of the law, but it must treat all alike who in good faith engage in the business, and this where the side tracks are so constructed that the elevators must of necessity be constructed on the right of way, or along such side tracks on the sides of its right of way so that elevators may be constructed on the builder's own land.

It follows that the writ will be granted. It probably will be unnecessary to issue the writ, as no doubt the proper facilities will be furnished without further order. Should they not be so furnished, however, within forty days, the writ will be issued as prayed for.

WRIT ALLOWED.

THE other judges concur.