**Jacob Meltzer et al., Appellants, v. City of Chicago et al., Appellees.**

**Gen. No. 14,794.**

1. NUISANCES—*what constitute. Held,* that a wooden stand erected upon the roof of a building within the fire limits of the city for the use of spectators was a nuisance which it was the duty of the municipality to abate.

2. ESTOPPEL—*application of doctrine, in pais, against municipality.* The doctrine of estoppel *in pais* applies to municipal corporations only to the extent that it leaves the courts to decide the question by all the circumstances of the case and to hold the public estopped or not as right and justice may require; and it does not apply where a city official has exceeded his authority in issuing a permit in violation of a city ordinance.

3. ORDINANCES—*prohibiting erection of wooden stands valid. Held,* that the wooden stand erected in this case upon the roof of a building within the fire limits of the city was within the ordinance invoked against it and that such ordinance was not unreasonable and void.

4. COMMISSIONER OF PUBLIC WORKS—*when building permit void.* A building permit issued by the Commissioner of Public Works confers no right if such commissioner was without authority to issue it.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed January 18, 1910.

**Statement by the Court.** This is an appeal from a

decree dismissing appellants' bill for want of equity, and granting relief on the cross-bill of defendants.

The bill of complaint is in substance as follows: Jacob Meltzer and Meyer Meltzer respectfully represent that they are residents of the city of Chicago, county of Cook and state aforesaid, and are the owners in fee simple of the property commonly known as 797 (also known as 799) West Taylor street, in the city of Chicago aforesaid, and have been the owners thereof for about the space of three years and over; that the rear part of said lot is next to and ajoining a certain large space of ground commonly known as the National League Baseball Park, which said ground is enclosed by a certain fence around it, and upon which said ground and inside of said fence in the proper season certain games are being played commonly known as the game of baseball; that orators, on or about the first day of March, A. D. 1907, being desirous of erect-ing a building upon the rear end of their said lot next to and adjoining said baseball park, went to the building commissioner of the city of Chicago with their plans and specifications for said building, and then and there informed said building commissioner that they were desirous of constructing their building so as to enable them to safely use the roof thereof for observatorial purposes; that said building commissioner thereupon approved the plans and specifications for said building then and there, knowing that said building was to be built at an extra and additional cost to orators so as to enable them safely to use said roof for observatorial purposes; that they thereupon proceeded to erect said building at such additional cost then and there, making the walls thereof of a thickness of thirteen (13) inches and building the roof upon certain heavy joists so that said roof might be strong and safe enough to keep at least three hundred persons thereon without any danger to them; that during the construction of said building the city of Chicago, which is hereby made a party defendant hereto, through its

building department, caused several inspections to be made thereof and approved the same, and from time to time offered such suggestions and made such demands as it deemed advisable in order to secure the safety of said roof, all of which was done at a great expenditure on the part of orators, and which would not have been done except for the purpose of insuring the safety of the said roof for the use thereof for spectatorial purposes, and during all of which time orators were ready and willing, and offered to construct their building to the satisfaction of the said building commissioner of the city of Chicago; that in the construction of said building they violated no ordinance and no law of this state, and that said building and the roof thereof is safe and secure enough to hold thereon at least three hundred persons without any danger to them.

Complainants further represent that on or about the 18th of March, A. D. 1907, they applied to the building commissioner of the city of Chicago for a permit to use said roof for spectatorial purposes for 100 persons, and that thereupon said commissioner caused said building and roof to be inspected and issued to complainants the following permit:

"CITY OF CHICAGO—DEPARTMENT OF BUILDINGS.

OFFICE OF THE COMMISSIONER OF BUILDINGS.
No. A-10,809—$5.00.                    March 19, 1907.

Permission is hereby granted to Mr. Meltzer to erect a grandstand on roof; use 100 persons; must comply in every respect with City ordinance.

No. 799 W. Taylor street.

This permit is granted upon the express conditions that the said Mr. Meltzer in the erection of said building shall conform in all respects to the ordinances of the City of Chicago regulating the construction of buildings in the city limits, and may be revoked at any

time upon the violation of any of the provisions of said ordinances.

By order of the Commissioner of Buildings.

(Signed)  PETER BARTZEN,
Commissioner of Buildings.

Amount of permit, $............

Received the amount indicated hereon.

(Signed)  JOHN E. TRAEGER,
City Collector."

That complainants, at the request of said building commissioner through his deputies, caused a railing to be constructed around the roof of said building all in accordance with the requirements of said building commissioner, and that since the nineteenth day of March aforesaid, complainants have been using said roof and permitting persons to go on and use said roof for spectatorial purposes for hire, thereby yielding to complainants a considerable income.

That on or about the first day of September, A. D. 1907, the said city of Chicago again caused said building to be inspected, and advised complainants to construct a fire escape on said building; although there is no ordinance or law requiring same, complainants immediately caused a fire escape to be put on said building, which said fire escape was duly inspected and approved by said city of Chicago, as is evidenced by a certificate of inspection, in the words and figures as follows, to-wit:

CITY OF CHICAGO—DEPARTMENT OF
BUILDINGS.

OFFICE OF THE COMMISSIONER OF BUILDINGS.

Certificate of Inspection.

No. 2735.                              Sept. 16, 1907.

Central Iron Works.

This is to certify that I have examined fire escape on building located at No. 797 West Taylor street, and find same built in a good, substantial manner, and con-

forms to Section 1094 of the Building Ordinance of the City of Chicago of date March 13, 1905.

(Signed)    JOSEPH DOWNEY,
Vaughan.                Commissioner of Buildings.
  Received the amount indicated hereon.
              (Signed)    E. J. MAGERSTADT,
                              City Collector."

That on or about the twentieth day of June, A. D. 1907, the said city of Chicago, through its said building commissioner, requested complainants to place on file in said city of Chicago an engineer's certificate of inspection of the roof of said building, with which demand complainants immediately complied, and did place on file with the department of buildings of said city of Chicago an engineer's certificate of inspection made by Thomas & Kelley, inspectors.

That they have had several and repeated conversations with Joseph Downey, commissioner of buildings of the city of Chicago, and some of his deputy commissioners, all of whom assured complainants that said building and roof thereof was in a safe and secure condition, and complainants represent that they repeatedly offered to comply with such other and further reasonable demands that the city of Chicago might make to further secure the safety of said building, but that no further demands were made of them, but they were repeatedly assured that the same was safe and secure.

That on or about the twenty-first day of September, A. D. 1907, without any notice thereof to complainants, the city of Chicago, through George Shippy, superintendent of the police department, who is hereby made a party defendant hereto, caused a certain number of policemen of the city of Chicago to be stationed at the entrances and exits leading to and from said building, and prohibited persons from going to said premises or upon the roof thereof, and that said city of Chicago threatens to continue said conduct and to prohibit complainants the use of said building as aforesaid.

The bill prays that the said city of Chicago and George Shippy, superintendent of police of said city of Chicago, and each of them, may be required to make full, true and perfect answer to this bill of complaint, and show if they can why they and each of them should not be enjoined and restrained from interfering with the free use by complainants and their patrons of the said roof for observatorial purposes, and from in any manner interfering with the building or premises of complainants, and for a writ of injunction restraining the said defendants from in any manner interfering with the free use by complainants and their patrons of the said roof for observatorial purposes, and from in any manner interfering with the building or premises of complainants; and that upon the final hearing of this cause said injunction be made permanent and that complainants may have other and further relief in the premises, according to equity and good conscience.

Defendants answered the bill denying the material allegations in complainants' bill and denying specifically that said building and the wooden grandstand on the roof thereof was constructed in compliance with the building ordinances of the city of Chicago, and that it was a safe structure for the occupants of said wooden grandstand, and setting forth facts showing the violation of section 656 Revised Municipal Code, which prohibits wooden grandstands or tiers of wooden seats, commonly known and described as grandstands, to be erected within the fire limits where any part of such structure shall be within less than sixty (60) feet of any other building or structure, and which requires that the person or corporation desiring a permit for the construction of such grandstand shall first obtain the consent in writing of the owners of a majority of the frontage on both sides of the streets on each side of the block or square in which it is desired to erect such grandstand, and alleging a violation of this and other sections of the city ordinances and alleging that said wooden grandstand is a continuous menace to the

community and to other property; that it increases the risk of fire and is dangerous and unsafe and is a menace to the life and limb of the patrons who use said wooden grandstand on the roof of said building for spectatorial purposes.

By leave of court defendants also filed their cross-bill setting forth the dangerous condition of this wooden grandstand on the roof of said building, that it is a continuing nuisance and menace to life and limb of the occupants, and setting forth the several violations of the city ordinances in its construction and also the deviation from the approved plans in its construction; also setting forth certain city ordinances which provide in substance that any building or structure built in violation of the city ordinance shall be torn down and removed by the commissioner of buildings, and by its said cross-bill the city asks that said wooden grandstand thus unlawfully constructed upon the roof of said building in violation of the city ordinances, shall be removed or torn down by the commissioner of buildings.

The complainants, defendants to the cross-bill, answered in substance denying the allegations of the cross-bill. The answer sets up that before and at the time of the filing of the original bill in this cause the following ordinances were in force in the city of Chicago:

"It shall be unlawful for any person, whether owner, lessee, manager or person in control, or having charge of any building within the city, to permit the use of the roof of any house or building, whether free of charge or through admission fee, to any person as a place of observation or for spectatorial purposes, unless he has first obtained from the commissioner of buildings of the city a permit; Provided, however, it shall not be unlawful for any person, whether owner, lessee, or the person in control or having charge of such house or building to permit the roof of any such house or building to be used as a place of observation or for specta-

torial purposes, for a number of persons not exceeding ten, and when no admission fee is charged.

"723. Before issuing a permit as provided for in the foregoing section, the commissioner of buildings shall make an investigation as to whether such building is safe and secure enough to permit the presence of an estimated number of persons upon the roof thereof, and the permit so issued shall state the number of persons to be permitted on such roof. The commissioner of buildings shall see to it that every such roof is surrounded and inclosed with a railing or balustrade of sufficient height and strength to afford adequate protection.

"724. The person requiring such permit, as hereinabove provided for, shall make application to the commissioner of buildings for such an investigation, and shall pay, as a fee for such investigation and such permit, the sum of five dollars."

The answer then avers that, pursuant to the said ordinance hereinabove quoted, they applied to the commissioner of buildings to make an investigation as to whether the building hereinabove described is safe and secure enough to permit the presence of one hundred (100) persons upon the roof thereof; that an investigation was made and the permit in the cross-complainants' bill of complaint described was issued; that the said roof is surrounded and inclosed with a railing and balustrade of sufficient height and adequate protection, all of which has been duly investigated by the commissioner of buildings of the city of Chicago aforesaid, and duly approved of by him, and that these cross-defendants have paid to the said city of Chicago the sum of five ($5) dollars as a fee for said investigation and permit, all in accordance with the said ordinance hereinabove quoted.

Upon final hearing the court entered a decree dismissing the original bill for want of equity. On the cross-bill after proper findings the court decreed that the defendants to the cross-bill remove the wooden grandstand within twenty days and upon their default

in so doing, the same shall be torn down and removed by cross-complainants at the cost of cross-defendants.

On the hearing appellants offered proof that they were owners of the property in question and that the building and grandstand on its roof were erected upon plans and specifications approved by the building commissioner of the city of Chicago, at a very considerable expense in excess of their original plans which were modified and changed to suit the requirements of that officer.

The complainants offered in evidence sections 722, 723, 724 and 725 of the Revised Municipal Code of the city of Chicago of 1905, regulating the use of roofs for spectatorial purposes and issuing permits therefor, and specifying fees for inspection of buildings and for permits and prescribing penalty for violations of the ordinance; and proved that they had paid $5 to the building commissioner for a permit to them to erect a grandstand on the roof of their building for 100 persons and received a permit which was also put in evidence.

Proof was also made that while the seats were being constructed Vaughan, a district inspector, was present and made no suggestion as to changing the construction, but informed appellants it would be necessary to have a fire escape constructed in the rear of the building. This the appellants constructed, and the certificate of the commissioner of buildings, to the effect that it was built in a substantial manner and conformed to the building ordinance of the city, was put in evidence.

The building is a two flat building, as it is called in the evidence, two stories high, built of brick and stone with a stone foundation. It has two outside stairways leading to and from the roof. One, built of wood, is located in the yard on the south side of the building; the other is an iron stairway on the alley side—the north side—of the building. The wooden stairway is three feet wide and the other two feet wide.

Evidence was offered by the defendants tending to show that the construction of the building was not in conformity with the approved plans, the height of the stand from the ground, the danger of panic, the increased fire hazard, the insufficiency of the stairways, the failure to secure consent in writing of the owners of a majority of the frontage on both sides of the street as provided by section 656 Revised Municipal Code, failure to secure amusement license required by the ordinance and to pay for the same, that the stand is within a few feet of another building or structure of a similar kind, thus increasing the danger from fire, and that the structure is a nuisance, and is dangerous to occupants of it, and to adjoining property.

HORNSTEIN & FISHER, for appellants.

EDWARD J. BRUNDAGE, WILLIAM S. STAHL and EMIL C. WETTEN, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

We are inclined to assent to the proposition advanced by appellants that a municipality cannot declare a thing to be a nuisance which is not so in fact. But it has no bearing upon the facts in this case, for we think a wooden structure such as this roof stand is shown by the evidence to be, within the fire limits of the city, is clearly a nuisance as it stands, and the defendant, city of Chicago, has the clear right, and it is its duty, to abate the nuisance, unless the acts of its officers which have induced the action of the complainants in constructing the building and the seats on the roof of the building have worked an estoppel on the municipality, by making it inequitable to permit the municipality to stultify itself by retracting what its officers have done.

The doctrine of estoppel *in pais* applies to municipal corporations only to the extent that it leaves the courts to decide the question by all the circumstances

of the case and to hold the public estopped or not as right and justice may require. C. & N. W. Ry. Co. v. The People, 91 Ill. 251; Martel v. City of East St. Louis, 94 *id.* 67; Lee v. Mound Station, 118 *id.* 304. And it does not apply where the city official has exceeded his authority in issuing a permit in violation of a city ordinance. Burton Co. v. City of Chicago, 236 Ill. 383; Hibbard, Spencer, Bartlett & Co. v. City of Chicago, 173 *id.* 91.

This brings us to a consideration of the main question in the case, the construction of sections 656, 722, 723, 724 and 725 of the Revised Municipal Code of Chicago, and their application to the structure of complainants. It is contended on behalf of complainants that section 656 does not apply to the subject-matter of this suit, and that sections 722 to 725, both inclusive, are applicable, and that the permit in this case was applied for and granted under these sections of the code and that these sections govern the construction and use of the structure in question. On behalf of the defendants it is urged that sections 722 to 725 were adopted by the city council in their present form in January, 1901, and that section 656 was adopted by the city council March 20, 1905. Construing these sections together, and giving to each its proper force, the legal effect of section 656 is to limit the application of the other sections to buildings and structures within the fire limits of the city which conform to the provisions of section 656.

This last named section is set out in the answer of the defendants, and its language is broad and comprehensive. "Wooden grandstands or tiers of seats, commonly known and described as grandstands," is sufficiently general and comprehensive to include all tiers of seats erected on the ground or on roofs for spectatorial purposes within the meaning of section 722, and within the fire limits of the city of Chicago. We find no difficulty in reading and construing section 656 with other sections named. There is no conflict between them, and they should be construed together.

It is urged, however, on behalf of complainants, that if section 656 be construed to apply to the structure here in question—a wooden stand erected on the roof of a building—it is an unreasonable ordinance and therefore void. We do not think the ordinance is unreasonable. In our opinion it is a valid ordinance. By its terms it applies to structures within the fire limits of the city. It cannot be said that the prohibition against the erection of wooden stands or tiers of seats within sixty feet of any other building or structure within the fire limits is unreasonable, for it is a necessary precaution against the spread of fire. Such structures, if permitted to be erected close together, or close to other buildings, would be the most effective means of spreading a conflagration. As to that part of the section requiring frontage consents, it has been held that requiring such consents does not violate the constitutional maxim, which prohibits the delegation of legislative power by the body upon which it is conferred. City of Chicago v. Stratton, 162 Ill. 494; Patterson v. Johnson, 214 *id.* 481.

The wooden stand or tiers of seats, which the decree directs the complainants to remove from the roof of their building, were erected, as appears from complainants' bill and the evidence in the record, about two years after the adoption of section 656 by the city council, and while the ordinance was in full force and effect. Complainants were charged with knowledge of the ordinance and its provisions. They knew that the structure which they proposed to put on the roof of their building would be, when erected, within a few feet of the adjoining building, and they should have known that it was prohibited by the ordinance. As said in J. Burton Co. v. City of Chicago, *supra,* complainants, in applying for a permit, must have known the commissioner had no power to grant it. The permit itself purports to be issued in pursuance of the ordinances of the city. The issue of the permit gave no right to complainants because the commissioner who

signed it was without authority to issue it. He was prohibited from issuing the permit by the ordinance. ''Every person is presumed to know the nature and extent of the powers of municipal officers, and therefore cannot be deemed to have been deceived or misled by acts done without legal authority.'' Seeger v. Mueller .et al., 133 Ill. 86, 95; City of Danville v. Danville Water Co., 178 *id.* 299; City of Chicago v. Williams, 182 *id.* 135.

It follows logically from the principles laid down by the above cited cases that no estoppel can ordinarily arise from the act of a municipal corporation or officer done in violation of or without authority of law. When such acts are performed under authority of law another question arises. But, in either case, where the principle of an estoppel *in pais* is applicable it is for the courts to decide the question, as we have seen, and to hold the public estopped or not as right and justice may require.

On the question of right and justice as between the parties to this controversy, we are unable to discover any quality of justice or equity in complainants' position. They come into a court of equity as violators of ordinances designed and adopted to protect life and property, and ask the court to grant them equitable relief against the public authorities whose duty it is to enforce such laws and regulations for the protection of the public. Complainants by their bill show that to the extent of preparing and using their property for spectatorial or amusement purposes, where large numbers of people are invited to congregate upon the payment of admission fees, they have devoted their property to a public use; and by that act they have in effect given to the public authorities the right to regulate the use of the property for such purpose. Under such circumstances it does not rest with them to come into a court of equity and ask that the general regulations of the municipal authorities applicable to private property

devoted to such purposes shall not be enforced against them, where there are elements of danger to the lives and limbs of the occupants of such property. As against the efforts of the public authorities to enforce reasonable regulations designed to protect the public who may be induced to patronize such an establishment, complainants have no standing in equity.

In view of the evidence in the record showing elements of danger in the structure, entirely apart from any weakness in the building or the stand which rests upon it, showing increased fire hazard, insufficent means of exit, danger of panic on account of the height of the structure, and a clear violation of valid city ordinances, the Circuit Court was right in denying to complainants any relief under their bill of complaint. And in view of the fact that complainants brought the whole matter into a court of equity, we see no reason why the court should not decree that to be done which ought to be done, and order the structure, which is a constant and continuing menace to life and property, to be removed, without remitting the parties to proceedings at law.

The decree is affirmed.

*Affirmed.*