THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* HARMON SPRUANCE *et al.*

*v.*

THE CHICAGO & NORTHWESTERN RAILWAY CO.

1. RAILROADS—*of the right of others to connect their side-tracks with a railroad.* By the rules of the common law, railroad companies can not be compelled to permit individuals to connect side-tracks of their own, with the tracks of the companies, in order to enable the latter to carry grain to warehouses or elevators which have been erected off their lines of road.

2. SAME—*averment of a custom in that regard* And where it is sought to compel a railroad company to permit such connection, upon the ground of an alleged custom among the companies whose lines concentrate at the place indicated, the custom must be made clearly to appear, and to have existed so long as to have the force of law.

3. LESSEE—*whether a contract passes to him.* The owner of a lot of ground in the city of Chicago, having erected a grain elevator thereon, was permitted, by contract with a railroad company, to connect a side-track, extending from his elevator to the company's line, with its track. So far as appeared, the contract was purely personal, and in no way attached to

the realty: *Held*, a subsequent lessee of the elevator did not succeed to any of the rights of his lessor, in respect to such contract.

4.  SAME—*of rights granted to the lessor by ordinance of the city.* Where the city had, by ordinance, granted to the lessor the privilege of laying down a track along one of its streets, in order that he might connect his elevator with the line of a railroad, such grant of authority being made specially to the lessor, the mere leasing of his elevator to a third person would not operate to pass to the lessee any of the rights secured to the lessor under the ordinance.


APPEAL from the Superior Court of Chicago.

Messrs. GOUDY & CHANDLER, for the appellants.

Mr. JOHN N. JEWETT and Mr. JAMES H. HOWE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a proceeding by mandamus, on the part of appellants, in the Superior Court of Chicago, against appellees. The object of the proceeding was, to compel the railroad company to permit the junction of a railway track from the grain elevator of appellants, with the main track of appellee's road, and when thus connected, to compel the company to deliver at the warehouse all grain shipped to it, for storage. The writ avers, that the warehouse was erected by Maher and Newberry in the year 1862, on land then, and now, owned by Maher; that the elevator is a public warehouse for the storage of grain; that the railway company, under an ordinance of the city, laid and constructed their railway tracks from the western limits of the city along Kinzie street, across the north branch of the Chicago river, and thence along North Water street to the lake shore.

It is averred, on the belief of the relators, that before the warehouse was erected, an agreement was made between the Galena & Chicago Union Railroad Company (which was subsequently consolidated with appellees' company) and Maher,

438        THE PEOPLE *ex rel. v.* C. & N. W. R. W. Co. [Sept. T.,

Opinion of the Court.

that a switch might be placed in their track, and a road run thence to the warehouse, which was intended to enable freight cars to pass from their main track to the warehouse, and there discharge grain shipped to it for storage.; and that Maher and Newberry obtained a license to make such connection, from the city, by an ordinance duly adopted; and, thereupon, one Hiram Wheeler obtained, by lease of Maher, his interest in . this elevator, and he thereupon constructed a railroad track from the main line of the company to the warehouse, and the company from that time used the same, and run their cars to the elevator, and there discharged such grain as was consigned to it for storage ; that some time during the year 1865, Wheeler ceased to have any interest in this warehouse, and the railroad company thence refused to deliver grain at that warehouse ; that about a year afterwards, Wheeler, who had control of a portion of the ground over which this track run, compelled its removal, and the connection was thus broken with the consent of the company ; that appellants became the lessees of the warehouse in August, 1869 ; that they had complied with the ordinance of the city so as to acquire the right to construct a track from the warehouse to the main track of the company, and applied to the company to connect the same with their road, and that they would carry to, and deliver, such grain as might be consigned to it for storage, but the company. had refused, and still refuse ; that appellees have railroad connections with a number of other warehouses at which they deliver grain, and that this and other companies running into Chicago do not have the necessary facilities for storing grain, but depend upon private enterprise for the purpose ; that it is the custom and usage of all such railroads to use such connecting tracks to deliver grain at various elevators in the city, and that this road unlawfully discriminates against appellants in refusing to deliver grain at their warehouse, or in not permitting them to form such a connection with their road as would render it easy and convenient to thus deliver grain.

It is also averred, that such unlawful discrimination is induced by a contract entered into by the company with other warehousemen, only to deliver grain transported over their roads to the warehouses of such parties.

It is averred, that relators have no adequate remedy at law, and it concludes with a prayer that the railroad company be compelled to permit them to construct a track, connecting their warehouse with the railroad, by a switch, and then to carry and deliver to them all grain that may be consigned to their warehouse for storage.

To this writ, appellees demurred, and it was sustained by the court, and a judgment was rendered in favor of the company. To reverse the judgment, relators have brought the record to this court by appeal, and assign for error the sustaining of the demurrer to the writ.

In the case of *Vincent* v. *Chicago & Alton Railroad Co.* 49 Ill. 33, it was held that: "A railway company can, unquestionably, refuse to allow the owner of adjacent property to lay down a side-track connecting with its own rails." Appellants admit, that, under the rules of the common law, this company could not be compelled to permit appellants to unite their track with that of the company, but they insist, that the railroads entering Chicago, having established a custom whereby all public warehouses have been permitted to make such a connection, and grain having been, by them, delivered in bulk into such warehouses, it therefore follows that appellees can not make a discrimination between the different warehouses.

The averments of the writ do not bear the construction that this company had permitted the owners of all other elevators to thus connect with their road; nor does it appear that all are so connected. But even had it been averred, that all warehouses in the city, except that of appellants, were so connected, still there is no averment of the terms or conditions upon which the connections had been made. And it certainly fails to appear that it had been, or was the usage, that such warehouses might be thus brought in connection with this or

other roads, without the consent of the companies ; and in the absence of such an averment, we would not presume such a custom to exist. Even if such an averment had been made, we are not prepared to hold that such a usage, for so short a period, would have acquired the force and effect of a law, repealing or abrogating their common law right to refuse. Customs that obtain the force of laws, are not thus readily obtained. We are, therefore, clearly of opinion, that under the rules of the common law, or under the custom averred in the writ, we have no power to compel this connection, without the consent of appellees.

It is likewise insisted, that as it is averred and admitted by the demurrer, that in 1862 appellees agreed with Maher and Newberry to allow such a connection, relators have, thereby, the same right. There is no pretense that the company ever entered into such an agreement with relators. If such an agreement was ever made, so far as we can see, it was entirely personal with them, and there is no averment which shows relators to have succeeded to the covenants of the agreement, if it contained any, or in what manner they claim, under a personal agreement of these other parties. We presume it was like ordinary contracts entered into by parties, which do, and can, only bind the parties who enter into them. The agreement averred to have been made, in nowise appears to have, in the slightest degree, attached to the real estate on which the elevator is located, and if not, these lessees of the property have succeeded to no right to claim the enforcement of the contract ; that belongs to Maher and Newberry, if a breach has occurred on the part of the company, and their remedy would, in such a case, be complete by the appropriate action at law.

It appears Wheeler had control of a portion of the ground over which the side track formerly ran, and it is averred that he compelled the removal of that portion of the track. Being the owner, or having some other power to control it, we must presume he acted according to his legal rights in compelling

its removal. If he did not have the legal right, it is not probable those having the right to the use of the track would have submitted to its discontinuance. But that was a different track from the one sought to be constructed, made by other parties for their (and not appellants') convenience or interest. And not only so, but the removal of the track had occurred some years before appellants leased these premises, and they took the property as it was then situated; and we have seen that this, or the other track, was not appurtenant to the property.

Again, the authority conferred by the ordinance was to Newberry and his partners, to lay the track over the streets named; it was a special authority to them. It was not to them and their assigns, but to them personally; and relators have not shown they were a portion of the persons who formed the firm of Newberry & Co., to whom the special privilege was given, nor do we understand from the record how relators have, in any manner, succeeded to their rights.

From a careful examination of this record, and the arguments of counsel, we are unable to perceive any error in this record, and the judgment of the court below is therefore affirmed.

*Judgment affirmed.*