(No. 20533.—

THE PEOPLE *ex rel.* Charles E. Peace, Petitioner, *vs.* THOMAS TAYLOR, Circuit Judge, Respondent.

*Opinion filed December 18, 1930.*

JOHN F. TYRRELL and WERNER W. SCHROEDER, for petitioner.

FLOYD E. THOMPSON, and JOHN D. BLACK, for respondent.

URBAN A. LAVERY, for Wallace F. Kirk, intervenor.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an original petition for a writ of *mandamus*. The facts alleged in the petition are not disputed and are as follows: On April 8, 1930, a primary election was held for nomination of a candidate of the Republican party for

the office of State senator for the 29th senatorial district in the county of Cook. There were three candidates: John T. Joyce, Wallace F. Kirk and Charles J. Monahan. The board of election commissioners of the city of Chicago on May 8, 1930, filed with the county clerk their certificate showing the results of that primary, and that clerk in turn filed his certificate of like character in the office of the Secretary of State. The State Primary Canvassing Board canvassed the returns of said primary election, and on May 16, 1930, made proclamation thereof as required by law, showing that John T. Joyce had received 4268 votes, Wallace F. Kirk 3997 votes, Charles J. Monahan 188 votes, and that two votes were cast which the certificate characterizes as "scattering." This certificate shows that John T. Joyce was the nominee of the Republican party for the office of State senator. Thereafter, on May 20, 1930, Kirk filed a primary election contest in the circuit court of Cook county, in which Joyce and Monahan were named as defendants. That contest bore the title of *Wallace F. Kirk, contestant, vs. John T. Joyce and Charles J. Monahan,* and the general number B200769. In the contest petition Kirk alleged divers frauds and irregularities and prayed that the ballots be brought into court and re-counted and that he be declared the nominee. Issue was joined and the contest proceeded to a hearing before the respondent, one of the judges of the circuit court of Cook county. That hearing proceeded until July 12, 1930, and was on that date, by stipulation of the parties, continued to September 22, 1930. During the intervening period the respondent was absent from the State.

On August 16 John T. Joyce died, and on August 28 the counsel who appeared for Joyce in the primary contest appeared before the Hon. David M. Brothers, who was holding "emergency court" in the circuit court during the month of August, and moved for leave to appear as *amicus curiæ* to suggest the death of Joyce and that the suit be held to be abated. A hearing on this motion was set for Septem-

ber 4, on which day Judge Brothers entered an order reciting that the cause had abated and dismissed the petition. On September 22, 1930, the respondent returned to Chicago and on motion of Kirk set aside the order of Judge Brothers declaring the cause abated and proceeded to a further hearing of the contest on its merits, and on September 27, 1930, entered an order finding that fraud had existed in certain precincts at the primary election, which he endeavored to purge by throwing out ballots in several precincts, and found as a result that Kirk had received 3979 votes and Joyce 3823 votes for the nomination for State senator. The order also found that Monahan received 188 votes, as was shown by the certificate of the returns for the nomination of officers.

The petition for *mandamus* sets up that the relator is, and has for more than five years last past been, a resident of the 29th senatorial district; has for that period of time, and longer, had all the qualifications prescribed by law for the office of State senator for the 29th senatorial district; that he is a member of the Republican party, and that on August 25, 1930, the senatorial committee for that district, for the purpose of filling the vacancy in the nomination of the Republican party for the office of State senator caused by the death of Joyce, nominated the relator as candidate of the Republican party for that office and executed its certificate to that effect. The petition also avers that on September 12, 1930, the senatorial committee caused its certificate to be filed in the office of the Secretary of State, together with a certified copy of the decree of the circuit court entered on September 4 showing the death of Joyce and the abatement of the contest, and that the State Primary Canvassing Board found that by reason of the death of Joyce a vacancy existed in the Republican ticket in the 29th senatorial district for the office of State senator. The petitioner charges that by reason of the acts of the respondent as judge of the circuit court the State Canvassing Board

is withholding his certificate as nominee, and he prays that a writ of *mandamus* issue directed to the respondent, as judge of the circuit court, commanding him to expunge from the records of that court the order of September 27 declaring Kirk to be the nominee. Leave was granted by the court to file this petition and a rule was entered on the respondent to answer the same by a short day. The respondent demurred to the petition, and issues were made up on the sufficiency of the facts alleged therein as basis for the relief prayed. Kirk, the contestant in the election contest, was granted leave to, and did, file his intervening petition, which recites the facts set out in the petition and certain additional facts having to do with what occurred in the circuit court on the hearing of the election contest, and joins in the demurrer of respondent to the petition filed. Kirk was given leave to join in respondent's brief and argument in this court.

By reason of the fact that to be of avail to the parties interested an early determination of the questions involved herein was necessary, this court at the October, 1930, term, entered judgment awarding the writ, which judgment is based on the following considerations:

The first question arising on the petition is whether on the death of Joyce the suit abated. The relator argues that this question is settled by *Olson* v. *Scully,* 296 Ill. 418, while the respondent argues that *Olson* v. *Scully* is to be distinguished from this case, and also that the ruling in that case is not in accord with the weight of authority. In that case Edwin A. Olson, Thomas F. Scully and William A. Cunnea were candidates on the Republican, Democratic and Socialist tickets, respectively, for the office of county judge of Cook county. The certificate of the canvassing board showed Scully to have been elected by a plurality of 12,610 votes. Olson filed a petition to contest the election. Cunnea answered, neither admitting nor denying the allegations of the petition. The contest proceeded to a hearing, and

the court found that Scully had received 172,342 votes, Olson 166,397 and Cunnea 25,255 and declared Scully elected. The cause was appealed to this court and while pending here Scully died. Counsel for Scully in the contest filed a motion to appear as *amicus curiæ* to suggest that the cause had abated. That motion was allowed and the cause was declared abated. This court in that opinion considered most of the questions involved in this case. Attention was there called to the well established rule of the common law that the death of either party at any stage of a proceeding abated the action. The statute on abatement was there considered, and it was held that the action did not come within the provisions of that statute abolishing in certain cases the common law rule. Not only the arguments of counsel in this case were there considered, but cases cited in support of the respondent's contentions in his brief and argument in this case were there cited and considered. On further consideration of the questions involved we adhere to the decision in that case. That decision is binding here unless the cases can be distinguished. The ground upon which distinction is sought to be established by the respondent in this case is, that this is a contest under the Primary Election law, while in *Olson* v. *Scully, supra,* the contest arose over the result of a general election. The contest in this case is brought under section 62 of the Primary act of 1927, (Laws of 1927, p. 487,) which provides that any candidate whose name appears on the primary ballot of a political party may contest the election of the candidates nominated on the face of the returns by his political party. The section sets out the provisions governing the procedure before the court in which the contest shall be heard. Jurisdiction is vested in the county or circuit court to hear primary contests. Summons must be issued and served as in the manner provided in cases in chancery. The case may be heard and determined by the court in term time or by the judge thereof in vacation. It

is also provided that if the grounds alleged are sufficient in law the court shall proceed in a summary manner and may hear evidence, examine the returns, re-count the ballots and make such order and enter such judgment as justice may require, and shall declare by decree, as in chancery, to be entered of record in the court, the result of the election. The judgment of the court shall be final. In a contest under the general Election law the statute (Cahill's Stat. 1929, secs. 113 *et seq.* p. 1169,) requires the filing of the statement of the contestant, issuing of summons as in cases in chancery, and that evidence shall be taken in like manner as in chancery, and that a trial be had of the issues in like manner as in chancery, and may be heard by the court in term time or by a judge thereof in vacation. The judgment of the court in cases of contests of such elections shall declare the person to be elected whom it finds entitled to that holding. The principal difference existing between contests of a primary election and that of a general election, aside from differences in minor detail, lies in the fact that in the latter case appeals may be taken to this court in like manner as is provided for taking appeals in cases in chancery.

It is argued by counsel for the respondent that because under the Primary act the court in which a contest is filed shall proceed summarily at term time or in vacation a valid distinction exists. This provision appears in both election acts pertaining to contests. Nor can the fact that the Primary act makes the judgment of the court hearing the contest final affect the common law rule as to abatement, since such provision of the statute has to do only with the effect of the judgment or order of the court, while if the cause is by law abated all jurisdiction to proceed to a judgment in the cause is at an end. Lack of the right of appeal has been considered by this court in determining whether leave to file a petition for *mandamus* shall be granted. *People* v. *Weaver,* 330 Ill. 643.

Counsel for the respondent argue that since an election contest is a statutory proceeding and not "an action, complaint in law or in equity," the abatement statute does not apply and abatement of the cause does not occur by reason of the death of the contestee. This is a misapprehension of the so-called Abatement act. Its operation is to prevent the application of the common law rule that all actions or proceedings abate on the death of either party. The fact that the statute does not apply produces just the opposite result from that argued for by the counsel. It has frequently been held in this State and elsewhere that a cause of action created by statute does not survive unless declared so to do by the statute itself or by provisions for its survival made by some other statute. (*Selden* v. *Illinois Trust and Savings Bank,* 239 Ill. 67; *People* v. *Western Life Indemnity Co.* 261 id. 513; *Wilcox* v. *Bierd,* 330 id. 571; *Olson* v. *Scully, supra; Green* v. *Watkins,* 6 Wheat. 260; 5 Ency. of Pl. & Pr. 786; 1 Comyn's Digest, 7173.) Statutes in derogation of the common law are to be construed strictly. The so-called abatement statute, which may be more properly denominated a survival statute, abolishes the common law rule of abatement in those proceedings included within its scope. The act is therefore a change or limitation of the common law rule and provides for survival of actions of the character and under the circumstances therein described. It is not contended that the Primary act or any other statute of the State provides for survival of a contest proceeding.

It is also argued that the contest referred to in this case is one which "concerns the political branch of the government," and that courts will not take jurisdiction to consider questions arising thereon unless the statute specifically requires it. It is a sufficient answer to this contention to say that the statute does require the courts to take jurisdiction of this election contest. It becomes, therefore, a statutory judicial proceeding. The fact that the act makes

the judgment final, obviously does not make such a contest a part of "the political branch of the government," which counsel seek to distinguish from matters of judicial jurisdiction. The court upon which jurisdiction is conferred by the statute is no less a court because of such jurisdiction. The act does not attempt to make the court a special inquisitorial body or apply any other than rules of law governing courts to its proceedings. The proceedings in this primary contest were judicial proceedings.

It is also argued that Judge Brothers, as an "emergency judge," had no jurisdiction to hear the motion to abate the cause since respondent was the presiding judge who had heard a portion of it, and that, though he had gone out of the State, he retained jurisdiction. To this there are two answers. First, the jurisdiction of the cause, if there was jurisdiction, rested in the court and not in the judge. The court was open for business and Judge Brothers was a judge of that court, and the fact that he is in this record characterized as an "emergency judge" does not affect the jurisdiction of the circuit court. Second, the petition shows that it sufficiently appeared in the election contest proceedings prior to the entry of the judgment here sought to be expunged that Joyce had died, and if this abated the proceeding, as we hold it did, the order entered by the respondent was void, for the reason that the circuit court, in which respondent was sitting at the time of the entry of the judgment here attacked, was without jurisdiction of the subject matter. The only order that court could have then entered in the cause was one dismissing the petition because the action had abated. Abatement of the suit or proceeding extinguishes jurisdiction in the court of the subject matter, and whether the court entered an order indicating the cause had abated or not, the cause was none the less abated by the death of Joyce.

It is further argued that because fraud is charged in the petition to contest and shown by the evidence, the peti-

tion here filed should be dismissed; that such a course is required by the public interest. Allegations of fraud can not give life to a proceeding where that proceeding has, under the law, abated. The legislature may provide against abatements of such proceedings under those circumstances but courts may not in the absence of legislative enactment.

It is also argued that there was a third candidate for the nomination of the office of State senator, and that if the death of Joyce abated the contest, by the same reasoning the death of Monahan, who received but 188 votes, should likewise abate it. Monahan made no claim to the nomination in the contest proceedings. Though the contest had survived because Monahan was made a party, it must have continued between Kirk, the contestant, and Joyce, the deceased, for it is clear from the facts set out in the petition that Monahan could not have in any way been affected by the contest proceedings. He had no certificate of nomination and could not have hoped that the contest would have changed the result of the vote so far as he was concerned. The issue, therefore, in the contest, had it continued, would have been the same—*i. e.,* whether Kirk or Joyce was nominated. Monahan could not in any way be affected either by the continuation or the abatement of the contest. This argument was considered in *Olson* v. *Scully, supra, Brents* v. *Smith,* 250 Ill. 521, *Arnold* v. *Keil,* 252 id. 340, and *Mayfield* v. *Miles,* 266 id. 186, and it was held that where a candidate in an election contest cannot, by reason of the small number of votes received by him, have been affected by the result of the contest such candidate is not a necessary party. In *Olson* v. *Scully, supra,* this point was considered and the authorities here cited by respondent discussed.

But it is argued the relator has no right to file this petition as he was not a party to the contest and had no interest in the subject matter. Counsel for the relator argue with force that since relator was declared the nominee by

the senatorial committee of the senatorial district he is an interested party; that by section 13 of the Legislative Primary act of 1927 provisions of the General Primary act, so far as applicable, are incorporated therein, and that by section 60 of the General Primary act, providing for nominations to fill vacancies by managing committees, relator's nomination was valid. We are not in this proceeding called upon to decide whether Peace is legally nominated, as that question is not involved here. *Mandamus* may be brought on relation of a party who has an interest in the subject matter of the petition. (*Murphy* v. *City of Park Ridge,* 298 Ill. 66.) Here the relator claims to be the nominee by the valid action of the senatorial committee and is seeking to have the judgment declaring Kirk to be such nominee expunged as void. His interests are directly affected by that judgment. The contest proceedings were inter-party. Under the statute they could be brought only by a candidate whose name was on the primary ballot. The present action is in the name of the People, on the relation of Peace. In *People* v. *Emmerson,* 323 Ill. 561, which was an original proceeding in *mandamus* filed in this court on the relation of the chairman of the Democratic county central committee of Cook county to test the constitutionality of the statutes providing the proceedings for the nomination of circuit judges in Cook county, the question of the interest of the relator was raised, but it was held that he had such interest as permitted the filing of the petition for *mandamus,* citing *People* v. *Harris,* 203 Ill. 272, and *County of Pike* v. *People,* 11 id. 202.

Other objections are raised on this record, but our decision of those discussed disposes of the case.

The respondent was without jurisdiction to enter the judgment complained of, and the writ of *mandamus* will be awarded.

*Writ awarded.*