GARY SOLOMON, Petitioner-Appellee, *v.* THE CITY OF EVANSTON *et al.,* Defendants-Appellants.

(No. 60594;

First District (2nd Division)—June 3, 1975.

Jack M. Siegel, Corporation Counsel, of Evanston, for appellants.

Richard L. Hoffman, of Evanston, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Petitioner, Gary Solomon, brought an action in the circuit court of Cook County seeking the issuance of a writ of mandamus to compel defendants, City of Evanston and Patrick Bridges, Director of Inspections and Permits, City of Evanston, to issue to petitioner a certificate of compliance (a prerequisite under an Evanston ordinance for construction of a nursing home) and, upon full compliance with all ordinances and regulations, a building permit to construct a nursing home. After a bench trial, the trial court issued the writ. Defendants appeal.

Although defendants raise several issues on appeal, it is only necessary to consider two: (1) whether petitioner has standing to bring an action for mandamus, and (2) whether petitioner has shown clear legal right to a writ of mandamus.

On February 7, 1973, petitioner entered into real estate contracts to purchase three contiguous lots in the city of Evanston. Each of the three lots was then zoned R6. At that time, nursing homes were permitted uses in R6 districts. Each contract to purchase was contingent on petitioner's ability to acquire a building permit from the City of Evanston to construct a nursing home on the subject property. Although earnest money was deposited in escrow, petitioner incurred no other expenses in acquiring the contracts. The contracts did, however, include a provision that petitioner would pay the owners of the property a monthly penalty if a building permit was not acquired within 90 days. At the time of trial, petitioner had paid approximately $1900 in penalties. The contracts to purchase were to expire on September 1, 1973. However, on March 19, 1973, an agreement was signed by petitioner and some of the owners to extend the contracts until termination of the lawsuit [1] regarding issuance of the permit. As of this date, petitioner's only interest in the subject property is still the contracts to purchase. The actual owners of the property did not join with petitioner in bringing this suit.

On March 5, 1973, the Evanston City Council commenced consideration of amendments to the Evanston Zoning Ordinance to remove nursing homes from the list of permitted uses in R6 districts and to reduce the R6 zoning of the subject area to a more restricted classification. On that date, it was also moved and carried "that it be the sense of the Council that no building permits be issued for any new structures other than single family residences" in the subject area until the above amendments were acted on.

On March 7, 1973, defendant Bridges received from his immediate superior a memorandum regarding the March 5 action of the city council. In the memorandum, defendant Bridges was directed to issue no building permits except for single-family dwellings in the subject area.

On March 15, 1973, notice was published that on April 5, 1973, a hearing would be conducted on whether the subject area should be rezoned to a more restricted classification. Pursuant to that notice, hearings were held on April 5 and 18, 1973.

On March 20, 1973, petitioner submitted certain plans for his nursing home to defendant Bridges pursuant to section 25—38 of Evanston Ordinance 89—0—70, and requested a certificate of compliance with the zoning ordinance. Section 25—38 of Evanston Ordinance 89—0—70 regulates the construction of new nursing homes in Evanston. In relevant part, section 25—38 provides:

"1. Any person acting individually or jointly with other persons

---

[1] The lawsuit was not actually filed until May 11, 1973.

who propose to build, own, establish or operate a nursing home, home for the aged, or sheltered care home, shall submit a pre-application form as furnished by the Department * * *.

In the case of new construction or the conversion of existing structures, said applicant shall also submit preliminary plans and specifications for the proposed home to the Department for approval.

2. In addition to the above, the applicant shall also submit a certificate from the Department of Inspections and Permits stating that the building or structure to be used as a nursing home, home for the aged, or sheltered care home, complies with the requirements of the Building Code and the Zoning Ordinance of the City of Evanston, and that said building is located within an area in which a nursing home, sheltered care home, or home for the aged is permitted in accordance with the present or hereafter adopted zoning ordinance."

It is admitted by petitioner that the plans submitted were insufficient for defendants to determine whether the proposed nursing home complied with the Evanston Building Code. It is also admitted that the plans did not provide for a loading dock and therefore, did indicate a violation of the Evanston Zoning Ordinance. No action was taken by defendant Bridges on this initial request.

On April 6, 1973, petitioner again inquired regarding his certificate of compliance.

On April 12, 1973, notice was published that a hearing would be conducted on May 3, 1973, on whether to remove nursing homes from the list of permitted uses in R6 districts. On May 3, 1973, that hearing was held.

On April 17, 1973, defendant Bridges responded to petitioner's request for a certificate of compliance. Bridges did not mention the lack of Building Code specifications, nor did he mention the lack of a loading dock. Instead, Bridges stated:

"In answer to your letter of April 6, 1973, please be advised that the property in question is zoned R6 General Residence District at present. However, this property along with others is before the Zoning Amendment Committee for consideration as to rezoning. Also, the listed permitted uses in all R6 districts are before the Zoning Amendment Committee.

Therefore, at this time I cannot confirm the proper zoning for a nursing home."

On May 11, 1973, petitioner filed the instant suit asking that defendants be compelled to issue a certificate of compliance.

On July 30, 1973, the Evanston City Council removed nursing homes from the list of permitted uses in R6 districts, and then rezoned the subject area to R1.

On April 17, 1974, the trial court issued the writ of mandamus.

Defendants initially contend that petitioner does not have standing to bring an action for mandamus concerning the subject property. In this regard, defendants' argument is three-fold. Defendants first attack the agreement extending the contracts to purchase signed by petitioner and the record owners. Defendants suggest that the extension agreement was not signed by all the record owners and that it was executed without consideration. Thus, defendants conclude that the contracts to purchase have expired and presently, petitioner does not have a contract to purchase the property.

Each contract to purchase property was executed by two record owners. The agreement purportedly extending those contracts was signed by only one record owner of each lot. While such a fact on its face may cast doubt on the validity of the extension agreement, defendants presented no evidence on this question to the trial court. Defendants did not cross-examine petitioner concerning the circumstances surrounding the signing of the extension agreement, nor did defendants present any direct evidence suggesting the extension's invalidity. At trial, defendants' counsel merely stated that some of the individuals who had signed the contracts to purchase had not signed the extension agreement. Defendants now argue that the absence of those record owners invalidated the extension agreement. However, on the state of the present record, this court can not determine whether all six signatures were still needed when the extension agreement was signed. For all that appears in this record, when the extension agreement was signed on March 19, 1973, three of the previous owners may have transferred their interest in the property to the remaining three owners.

■■■ This court will not reverse on speculation and conjecture. Any doubt arising from the incompleteness of the record will be resolved against the appellant. (*Brewer v. Brown*, 126 Ill.App.2d 69, 261 N.E.2d 483.) It is established that on appeal the party claiming error has the burden of establishing any irregularities, and one who seeks to reverse a decree carries the burden of showing that it is erroneous. (*Flynn v. Vancil*, 41 Ill.2d 236, 242 N.E.2d 237.) Defendants did not afford this court any other information in the records as to the nature of the extension agreement. We must now assume that the agreement was sufficient for the purpose for which it was offered. (*Hardy v. Bach*, 173 Ill. App. 123.) On the state of this record, the validity of the extension agreement was properly proven.

■■ Defendants next argue that petitioner is not the actual owner of the contracts to purchase, but rather, is the sole beneficiary of a trust which is, in fact, the real contract purchaser of the subject property.[2] Defendants contend that petitioner may not, in his own name, maintain an action for mandamus when the actual contract purchaser is a trust. Defendants cite no authority on the difference, if any, between the right of a trust and the right of the sole beneficiary of that trust to enforce a right of the trust. It is important to note that Illinois does not have a "real party in interest" statute. Rather, the law is that those having a beneficial interest in the subject matter and relief sought are the proper parties to sue. This is true even though they do not have legal title or interest therein. (*Huff v. Fulk*, 334 Ill.App. 33, 78 N.E.2d 328.) In the instant case, petitioner held the entire beneficial interest of the contracts to purchase. As such, he could properly maintain an action for mandamus in his own name. See *McKenzie v. Missouri Stables, Inc.* (1930), 225 Mo. App. 64, 34 S.W.2d 136.

Defendants' final challenge to petitioner's standing to bring this suit is based on *Clark Oil & Refining Corp. v. City of Evanston*, 23 Ill.2d 48, 177 N.E.2d 191. In *Clark* the supreme court held that a party having merely an option to purchase property contingent upon rezoning has no standing to question the validity of a zoning ordinance. Defendants argue that *Clark* is equally applicable to the instant facts and because petitioner's contracts to purchase were contingent on the issuance of a building permit, petitioner has no standing to bring the instant suit.

It is clear that *Clark* does stand for the proposition that a purchaser under a contract conditioned upon rezoning has no standing to attack the validity of a zoning ordinance. However, because of the reasons supporting the rule in *Clark*, it would be inappropriate to extend the *Clark* rule to a party seeking mandamus.

■■■ As the court in *Clark* noted, there is a definite reason why a party attacking a zoning ordinance must show greater standing than merely a contract to purchase. The reason is that a party attacking a zoning ordinance must show that the restraint imposed by the ordinance on his right to use his property bears no substantial relation to the public health, safety, and welfare. But where a party merely has a contract to purchase, he can make no such showing of restraint because he has no right to use the property in any manner. His only right, to purchase the property, remains unchanged regardless of the validity or invalidity of

---

[2] Although the trust agreement was not admitted into evidence, at trial petitioner admitted that the actual contract purchaser of the property was a trust of which he was the sole beneficiary. Therefore, for purposes of this argument, we accept defendants' statement of the relationship of the parties to the contracts.

the zoning ordinance. In a mandamus action, however, there is no requirement of a showing of unreasonable restraint. It would thus be inappropriate to require standing sufficient to show restraint.

■■ Additionally, as noted in *Clark*, a party attacking a zoning ordinance must show that he has sustained some direct injury as a result of the ordinance's enforcement. However, where a person merely has the right to purchase the property for a stated sum during a stated period, enforcement of any zoning ordinance will not interfere with that right. He can still exercise his only right, that is, to purchase the property. Consequently, he can show no injury and hence, has no standing. But again, a showing of injury is not required in a mandamus action, and thus to require standing sufficient for *Clark* would serve no valid or useful purpose. We conclude that there is a material difference between the interest required to attack an ordinance and the interest required to seek mandamus and, on that basis, do not find *Clark* controlling.

■■ Illinois cases have specifically spoken of the interest required to seek mandamus. A person may have no "legal" or property interest and yet have a "personal interest" which will warrant his application for mandamus. (*People ex rel. Walker v. Aurora, Elgin & Chicago Ry. Co.*, 141 Ill.App. 82.) In fact, a person seeking mandamus must only have an "interest" in the subject matter of the petition. (*People ex rel. Peace v. Taylor*, 342 Ill. 88, 174 N.E. 59.) Finally, in *People ex rel. Naughton v. Swank*, 58 Ill.2d 95, 104, 317 N.E.2d 499, the court stated that there must be a "logical nexus" between petitioner's status and the relief sought.

While no Illinois case has applied its test to a fact situation similar to the instant case, Ohio has applied its "beneficial interest test" to the exact same facts presented here. In *State ex rel. River Grove Park, Inc. v. City of Kettering* (1962), 118 Ohio App. 143, 193 N.E.2d 547, petitioner had a contract to purchase land contingent on his ability to have the property rezoned. In an action for mandamus, petitioner's standing was challenged. The court stated:

> "* * * where the relief is sought merely for the protection of private rights, the relator must show some personal or special interest in the subject matter * * *." (193 N.E.2d 547, 549).

Applying this test, similar to the Illinois test, the court concluded that petitioner did have sufficient standing to bring a petition for mandamus.

■■ In the instant case, petitioner is the sole beneficiary of a trust holding contracts to purchase three contiguous lots. As such, he has already paid over $1900 to the property owners while awaiting final action on his request for a certificate of compliance. We also note that the controlling Evanston ordinance (Evanston, Illinois, Ordinance 89—0—70, § 25—38) does not require any interest greater than a proposal

to "build, own, establish or operate a nursing home." Viewed in this light, petitioner has sufficient "interest" to maintain the present action.

Defendants next argue that petitioner is not entitled to the writ of mandamus because petitioner did not establish every material fact essential to show the plain duty of defendants to issue the certificate of compliance.

It is well settled that before a writ of mandamus will issue petitioner must show compliance with all the valid requirements of any applicable ordinances. (*People ex rel. American National Bank & Trust Co. v. City of Park Ridge*, 25 Ill.App.2d 424, 166 N.E.2d 635.) Mandamus is an extraordinary remedy; it is not a writ of right. It is incumbent upon petitioner to show that he has a clear and undoubted right to the issuance of the writ. (*People ex rel. Cantu v. School Directors*, 58 Ill.App.2d 282, 208 N.E.2d 301.) Anything less than strict and complete compliance with all necessary and applicable provisions must result in denial of the writ. *People ex rel. Citizens Bank & Trust Co. v. Ward*, 39 Ill.App.2d 20, 187 N.E.2d 533.

In the instant case, petitioners were required to comply with all the necessary provisions of section 25—38 of Evanston Ordinance 89—0—70 to be entitled to a certificate of compliance. Section 25—38 requires the submission of plans sufficient to determine the proposed nursing home's compliance with the building code and zoning ordinance. It is admitted by petitioner that the plans submitted to defendant Bridges were insufficient to determine compliance with the Evanston Building Code and that the plans submitted indicated noncompliance with the Evanston Zoning Ordinance. Since petitioner has not complied with the applicable provisions of section 25—38 it was error to grant the writ of mandamus.

We also note that petitioner in his amended petition failed to specifically allege the essential allegations of fact that he has complied with all necessary provisions. Petitioner's only allegation to this effect is the conclusional statement that he had a clear right to the issuance of the certificate of compliance. Such an allegation is patently insufficient to sustain an issuance of the extraordinary writ. *Eley v. Cahill*, 126 Ill.App. 2d 272, 261 N.E.2d 819; *People ex rel. Thomas v. Board of Education*, 40 Ill.App.2d 308, 188 N.E.2d 237.

Petitioner attempts to justify noncompliance with section 25—38 on either of two grounds. Petitioner first argues that a custom or usage then prevailed in Evanston in that plans similar to those submitted had been sufficient in the past for issuance of a certificate of compliance. Petitioner also argues that because defendant Bridges did not cite the inadequacy of the submitted plans when he refused to issue the certificate but instead

relied on an allegedly invalid building moratorium, defendants are now estopped from asserting the technical inadequacies of the plans.

To support his argument based on custom or usage, petitioner points to testimony that the same engineer who prepared the plans for petitioner's nursing home had previously prepared similar plans for another nursing home in Evanston and that those earlier plans had been sufficient for issuance of a certificate of compliance. Petitioner also points to testimony by defendant Bridges that, absent the alleged invalid moratorium, a certificate of compliance would have been issued based on the plans submitted.

■■ As to petitioner's argument based on custom or usage, petitioner's only evidence of such a custom was a single isolated instance where a certificate of compliance was issued on plans similar to those now presented. However, for custom or usage to be binding it must be uniform, and so well established as to have the force of law. *People ex rel. Spruance v. Chicago & Northwestern Ry. Co.*, 57 Ill. 436; *Katz v. Brooks*, 65 Ill. App.2d 155, 212 N.E.2d 508.

We first note that there is no indication in the present record as to exactly what was the custom. Without such evidence it is impossible to determine whether the custom was uniform. The present record does not explain what was meant by "similar" plans. Whether under the alleged custom the plans requested for issuance of a certificate of compliance were required to be sufficiently detailed to allow a determination of compliance with the building code is unclear. It does seem clear that the plans requested were required to show compliance with the zoning ordinance, and in this case, that was admittedly not done. Whether the earlier plans for the other nursing home that were accepted also showed noncompliance with the zoning ordinance was also not made clear. Moreover, petitioner can not persuasively argue that evidence of a single previous incident is sufficient to prove that the custom was "so well established as to have the force of law." In short, on the basis of this record, we can not conclude that there was a custom or usage then prevailing in Evanston, or if there was such a custom or usage, that petitioner complied with it.

■■ Finally, it must be noted that even if petitioner had proven that a custom or usage then prevailed in Evanston and that he had complied with it, his argument would be unavailing. For it has been consistently held that a custom can not be invoked to avoid a settled rule or law or to prevail against or overcome a statute and such an alleged custom is therefore not binding. (*Glaum v. Cummings*, 317 Ill.App. 655, 47 N.E.2d 359; *Vermilion County Production Credit Association v. Izzard*, 111 Ill.

App.2d 190, 249 N.E.2d 352.) In the instant case, the Evanston ordinance clearly requires the submission of plans adequate to determine compliance with the building code and zoning ordinance. It is also a settled rule of law that a writ of mandamus will issue only upon strict compliance with all necessary preconditions. Petitioner has admittedly failed to comply with the Evanston ordinance. He can not now circumvent the purpose and requirements of the ordinance and the rules for mandamus by reliance on custom or usage.

We now turn to petitioner's argument that the city is estopped from asserting the technical inadequacies of petitioner's plans because defendant Bridges did not cite the inadequacy of the plans but instead relied on the allegedly invalid moratorium in refusing to issue the certificate of compliance. Petitioner argues that although the defects in the plans could have been easily remedied, he was never given an adequate opportunity to correct the defects because he was not informed of the defects until after the instant suit had been filed. Petitioner argues that the city should be bound by Bridges' letter and that the propriety of the city's refusal should be determined solely on the basis stated in Bridges' letter. We find petitioner's estoppel argument unpersuasive for several reasons.

■■ A party can invoke the doctrine of estoppel against a municipality where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done. (*Cities Service Oil Co. v. City of Des Plaines*, 21 Ill.2d 157, 171 N.E.2d 605.) Two essential elements of such an estoppel doctrine are an affirmative act on the part of the city itself and that the affirmative act induced the complained-of action. *People ex rel. American National Bank & Trust Co. v. Smith*, 110 Ill.App.2d 354, 249 N.E.2d 232.

■■ Petitioner points to defendant Bridges' letter of April 17, 1973 as the affirmative act of the city of Evanston. However, petitioner fails to explain how that letter was an affirmative act. Bridges' letter did not grant petitioner anything, nor did it commit the city to any plan of action. Bridges' letter only informed petitioner of what he already knew; that is, that the area containing his prospective property was under consideration for rezoning. That the letter did not also state that the plans were technically inadequate does not by itself serve to make the letter an affirmative act. In *G&S Mortgage & Investment Corp. v. City of Evanston*, 130 Ill.App.2d 370, 264 N.E.2d 740, a city official had sent a letter to plaintiff stating that the only violation in his building was a valve leak. In a subsequent prosecution for other violations, plaintiff argued that the city was estopped on the basis of the letter. The reviewing court likened

the letter to mere nonaction or silence on the part of the city and noted that silence is never a sufficient affirmative act to estop a municipality. In *G&S* the city's letter was held not to be a positive act and thus the city was not estopped. In the instant case, Bridges' letter was similarly analagous to nonaction or silence on the part of the city, and thus petitioner has failed to prove an affirmative act on which to base estoppel.[3]

Even assuming that Bridges' letter was an affirmative act on the part of the city, petitioner has not shown that the crucial action in this case was induced by that act. Petitioner argues that he did "act" in reliance on Bridges' letter; that is, he failed to correct the plans submitted. However, petitioner's argument misconceives the crucial action in this case. That crucial action was his initial submission of inadequate plans. When Bridges' letter was received, petitioner had already taken the crucial action. Petitioner has failed to suggest any act of the city which induced his initial noncompliance and it is this initial act of noncompliance with which we are now concerned. For as noted earlier, there must be strict and complete compliance with all necessary ordinances before a party will be entitled to mandamus. (*People ex rel. Citizens Bank and Trust Co. v. Ward.*) The fact that petitioner "may" have an excuse for "continued" noncompliance is of no import in a determination of whether petitioner was initially entitled to mandamus. In the instant case, no affirmative act by the city induced the initial submission of inadequate plans. Petitioner's estoppel argument is therefore unavailing.

■■■ Finally, it is clear that estoppel will lie against a municipality in a matter of the exercise of its governmental functions only in extraordinary circumstances. (*People v. Larson*, 17 Ill.App.3d 683, 308 N.E.2d 148.) After a review of the entire record, we find no such circumstances present in the instant case. Indeed, it is clear after a review of the chronology of events that petitioner was aware even before he first requested a certificate of compliance that a zoning change was imminent. He proceeded despite that knowledge and can not now be heard to complain. See *Cities Service Oil Co. v. City of Des Plaines.*

Mandamus is not a writ of absolute right and should not be used in doubtful cases. (*People ex rel. Civic Restaurant, Inc. v. Prendergast*, 131 Ill.App.2d 68, 266 N.E.2d 166.) Where there is evidence to support the

---

[3] Petitioner also relies on certain testimony by defendant Bridges that indicated that absent the "moratorium" Bridges would have issued the certificate of compliance based on the plans actually submitted. We first note that the testimony on this point is unclear, but in any event, it is clear that estoppel does not apply where a city official has exceeded his authority in issuing a permit in violation of a city ordinance. (*Wise v. City of Chicago*, 183 Ill.App. 215; *Meltzer v. City of Chicago*, 152 Ill.App. 334.) Had Bridges issued a certificate based on the plans submitted, he would have exceeded his authority since the plans were not in conformity with the ordinance.

official action, the writ must be refused. It makes no difference what reasons were relied on by the municipality at the time of the refusal, for the burden is on petitioner to clearly establish his right to the writ. (*People ex rel. Civic Restaurant, Inc. v. Prendergast.*) In the instant case, there was uncontradicted evidence that petitioner failed to completely comply with the applicable Evanston ordinance. Since he had no absolute right to a certificate of compliance, it was error to award a writ of mandamus compelling issuance of that certificate.

Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

LEIGHTON and HAYES, JJ., concur.