GEORGE M. LONG, Plaintiff-Appellee, *v.* ELK GROVE VILLAGE *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 78-169

Opinion filed September 20, 1978.

Samelson & Knickerbocker, of Chicago (George B. Knickerbocker, of counsel), for appellants.

Palmer, Blackman & Mancini, P. C., of Chicago (Eldon L. Ham, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal by the defendants from the judgment of the circuit court in a mandamus proceeding ordering the defendant to issue a building permit. The plaintiff, George M. Long, is the beneficial owner of a land trust with the O'Hare International Bank as trustee. The property is located within an area of Elk Grove Village zoned as "Class B-2 General Business District" which includes among other permitted uses business and professional offices.

On January 20, 1977, the plaintiff allegedly entered into a lease arrangement with Women's Awareness of Chicago, Inc., for the purpose of conducting an ambulatory surgical treatment center, and in order to prepare the premises for such use, on April 15, 1977, he applied for a construction permit to do certain interior renovation. The application was denied on May 5, 1977. The matter was then taken to the Zoning Board of Appeals for the Village of Elk Grove and on May 12, 1977, a public hearing as required by ordinance was held at which all parties to the dispute were present and represented by counsel. Following the hearing, the Zoning Board of Appeals voted to reverse the decision of the building commissioner denying the plaintiff's application and sent a letter dated July 25, 1977, to the board of trustees of the Village of Elk Grove reflecting their vote "that the Board of Trustees direct the Building Commissioner to issue the proper permits to the appellant [Long] forthwith."

However, the zoning board is merely advisory and when no action was taken by the village, the plaintiff on August 30, 1977, filed his petition for a writ of mandamus. Apparently, the plaintiff's application was finally denied by the board of trustees on September 13, 1977. On December 15, 1977, a hearing was held in the trial court at which counsel for both sides argued whether an ambulatory surgical treatment center was a business and professional office and therefore a permitted use under Class B-2 zoning. No evidence was taken at the hearing. The court had before it only the pleadings, the statute governing ambulatory surgical treatment centers, and the village zoning ordinance. The court made specific findings of fact that the proposed use by the plaintiff was the same land use intensity as already permitted, and the village's denial of a permit under Class B-2 zoning was unreasonable and arbitrary. The court ordered the defendants to issue the prescribed construction permit. However, the execution of the writ was stayed pending this appeal.

The defendants raise the following issues on appeal: (1) that the trial court committed reversible error by proceeding to judgment without making O'Hare International Bank, which holds both the legal and equitable title to the subject property, a party to the proceedings; (2) that the trial court committed reversible error by granting mandamus where the plaintiff did not introduce any evidence and completely failed to prove any of the allegations of his petition controverted by the defendants' answer; and (3) that since the plaintiff failed to introduce any evidence as to the invalidity of the zoning ordinance, he did not establish any right to justify the issuance of the extraordinary writ of mandamus. However, since at no time did the plaintiff question the validity of the ordinance but merely sought to compel issuance of a permit under the existing ordinance, we find it unnecessary to consider this third argument.

■■ The defendants initially argue that the plaintiff, the beneficial owner of the subject property, may not maintain an action for mandamus without making O'Hare International Bank, the trustee, a party to the proceedings. However, the law is that one having a beneficial interest in the subject matter and the relief sought is a proper party to sue. *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 788, 331 N.E.2d 380.

As to the defendant's other argument, we believe the issue is more succinctly stated as whether there was sufficient evidence to support the trial court's finding that as a matter of law the proposed ambulatory surgical treatment center was a permitted use under the village's Class B-2 zoning, and, if it is a pemitted use under that zoning whether the plaintiff was entitled on the record to a writ of mandamus to compel the issuance of a building permit.

■■ The writ of mandamus is a summary writ issued from a court of competent jurisdiction commanding the officer to whom it is addressed to perform some specific duty to which the petitioner is entitled as a matter of right to have performed, and which the official or party owing the duty has failed to perform. (*People ex rel. Council 19 v. Egan* (1977), 52 Ill. App. 3d 1042, 1044, 368 N.E.2d 481.) Mandamus is the appropriate remedy for a party allegedly aggrieved by the wrongful refusal of a city official to grant him a building permit required by a municipal building or zoning ordinance. (*Koziol v. Village of Rosemont* (1961), 32 Ill. App. 2d 320, 326, 177 N.E.2d 867.) A petitioner must establish every material fact necessary to show the plain duty of the respondents to act as requested (*Egan*, at 1045; *People ex rel. Metropolitan Chicago Nursing Home Association v. Walker* (1975), 31 Ill. App. 3d 38, 41, 332 N.E.2d 750), and anything less than strict and complete compliance with all necessary and applicable provisions must result in denial of the writ. *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 790, 331 N.E.2d 380; *People ex rel. Citizens Bank & Trust Co. v. Ward* (1963), 39 Ill. App. 2d 20, 187 N.E.2d 533.

In the case at bar, the plaintiff alleged that he was seeking to conduct an ambulatory surgical treatment center to be duly licensed in accordance with the Illinois Ambulatory Surgical Treatment Center Act (Ill. Rev. Stat. 1977, ch. 111½, par. 157—8.1 *et seq.*). That act describes an "ambulatory surgical treatment center" as follows:

> "* * * any institution, place or building devoted primarily to the maintenance and operation of facilities for the performance of surgical procedures or any facility in which a medical or surgical procedure is utilized to terminate a pregnancy, irrespective of whether the facility is devoted primarily to this purpose. Such facility shall not provide beds or other accommodations for the overnight stay of patients. Individual patients shall be discharged in an ambulatory condition without danger to the continued well being of the patients or shall be transferred to a hospital.
>
> The term 'ambulatory surgical treatment center' does not include (1) any institution, place, building or agency required to be licensed pursuant to the 'Hospital Licensing Act', approved July 1, 1953, as heretofore or hereafter amended." (Ill. Rev. Stat. 1977, ch. 111½, par. 157—8.3(a).)

The Act also provides that "[t]he Department [of Public Health] shall prescribe and publish minimum standards, rules and regulations necessary to implement the provisions of this Act" which include construction requirements such as plumbing, heating, lighting and ventilation, number and qualifications of personnel, equipment, and facilities, programs and services to be provided. (Ill. Rev. Stat. 1977, ch. 111½, par. 157—8.10.) The defendants alleged that the zoning ordinance which permits the establishment of business and professional offices does not include ambulatory surgical treatment centers. The plaintiff also alleged that his building permit application and the plans and specifications filed in connection therewith met all the requirements of law, and that they were in full compliance with the ordinances of Elk Grove Village. The defendants denied those allegations.

The Zoning Ordinance of the Village of Elk Grove Village describes permitted uses in a Class B-2 Zoning District as follows:

> "B. Permitted Uses. The following and none other are permitted.
> 1. Retail sales and consumer service uses, * * *.
> 2. Business and professional offices.
> 3. Institutional and governmental uses."

The focus of the inquiry in the trial court concerned whether the ambulatory surgical treatment center was a business and professional office, and therefore, a permitted use under the Zoning Ordinance. The court found that the proposed use was of the same intensity as those uses permitted in the B-2 district and that the village's denial of "the utilization

of appropriate B-2 zoning permission" was "unreasonable and arbitrary."

■■ We do not believe that the conclusion of the court is warranted because of the lack of sufficient evidence to indicate that the subject property will be used for an ambulatory surgical treatment center rather than a hospital. The difference between an ambulatory surgical treatment center and a hospital is not a matter of common or general knowledge. (*Sundene v. Koppenhoefer* (1951), 343 Ill. App. 164, 98 N.E.2d 538.) Substantially the statute says that an ambulatory surgical treatment center is devoted to the performance of "surgical procedures." The rules and regulations prescribed by the statute state that in many respects ambulatory surgical treatment centers perform the same functions as a general hospital. There is nothing in the record to indicate which of the surgical procedures which will be performed in the subject premises are similar to ones performed in other professional offices such as the customary doctor's or dentist's office or whether the procedures will be more akin to those performed in a hospital. It was stated during argument that tonsillectomies are being performed at certain centers and perhaps appendectomies could be performed. The court commented that "it was at sea as to what kind of services other than abortions that could be performed at this type of clinic." There is no indication as to the times of use of such a facility, the traffic patterns that may develop and perhaps the use of emergency vehicles. The record does not indicate the size of the facility nor the number of beds nor the number of persons expected to be served. We believe that these are some of the facts that might be elicited at an evidentiary hearing which would bear on the issue of whether an ambulatory surgical treatment center is a business or professional office under the ordinance or whether in fact it is more like a hospital. See *Diakonian Society v. City of Chicago Zoning Board of Appeals* (1978), 63 Ill. App. 3d 823, 380 N.E.2d 843.

Additionally, the matter must be reversed for a hearing as to whether or not the plans and specifications filed in connection with the application for a building permit were in full compliance with the ordinances of the village. The village has specifically denied the allegation.

Reversed and remanded.

SIMON and McGILLICUDDY, JJ., concur.